ARIAS, *Petitioner,*
*v.*
EMPLOYMENT DIVISION et al, *Respondents.*
(No. 76-AB-209, CA 6049)
554 P2d 538

*Roberta J. Lindberg,* Lane County Legal Aid Service, Inc., Eugene, argued the cause and filed the brief for petitioner.

*Rhidian M. M. Morgan,* Assistant Attorney General, Salem, argued the cause for respondent Employ-

ment Division. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

No appearance for respondent Good Samaritan Hospital.

Before Schwab, Chief Judge, and Thornton and Tanzer, Judges.

TANZER, J.

## TANZER, J.

Petitioner appeals an order of the Employment Appeals Board which holds that she voluntarily left her employment without good cause, and disqualifies her from receiving unemployment benefits for an eight-week period from her termination of employment.

Petitioner had been employed as a hospital patient aide from March 1974 until September 1975. In August 1975 she and her husband separated and the next month dissolution proceedings were initiated. She testified that harassment by her husband and her apprehension regarding him caused emotional strain which, her physician advised her, aggravated her hypoglycemic condition making it difficult for her to work. She also testified that she resigned her employment and moved to Eugene pursuant to her attorney's advice that she move from Portland to be away from her husband. The referee found in accord with her testimony, but the Appeals Board found that she had not proved her medical or legal situation to its satisfaction, found that she had not carried her burden of establishing good cause for leaving work, reversed the referee and disallowed benefits for the eight-week period.

Petitioner argues that "good cause" to leave work, as used in ORS 657.176(2)(c),[1] can arise from conditions of the employe's personal life which are not

___

[1]ORS 657.176 provides in pertinent part:

"* * * * *

"(2) If the authorized representative designated by the administrator finds:

"(a) The individual has been discharged for misconduct connected with his work, or

"(b) The individual has been suspended from work for misconduct connected with his work, or

"(c) The individual voluntarily left work without good cause, or

"(d) The individual failed without good cause to apply for available suitable work when so directed by the employment office or the administrator, or

attributable to the employer or the employment and the Employment Appeals Board has ruled to the contrary.

The precise issue has never been judicially decided in Oregon. Other jurisdictions fall into two classes: (1) those where the statute expressly states that good cause must be or need not be attributable to the employer, leaving no room for judicial construction, and (2) those like Oregon where the statute is silent as to what constitutes good cause. Broden, *The Law of Social Security Unemployment Insurance,* 432 (1962).

Jurisdictions without express statutory direction have taken different approaches. Some have reasoned that the absence of statutory language such as "attributable to the employer" indicates a legislative intent that purely personal reasons are good cause. *See, Cal.*

---

"(e) The individual failed to accept suitable work when offered to him,

the individual shall be disqualified from the receipt of benefits until he has performed service for which remuneration is received equal to or in excess of his weekly benefit amount in four separate weeks subsequent to the week in which the act causing the disqualification occurred.

"(3) An individual shall be disqualified from the receipt of benefits until he has performed service for which remuneration is received equal to or in excess of his weekly benefit amount in one week subsequent to any week in which the act causing the disqualification occurs if the authorized representative designated by the administrator finds:

"(a) The individual left work to be married, or

"(b) The individual left work to accompany her or his spouse or companion or join her or him at a place from which it is impractical to commute to such work, or

"(c) The individual left work because of his or her marital status or domestic duties.

"* * * * *

"(5) Notwithstanding the provisions of subsections (2) and (3) of this section, if an individual who has been disqualified under these subsections establishes to the satisfaction of the administrator that he has, in not less than eight separate weeks, subsequent to the week in which the cause for disqualification occurred, been able to work, available for work, and been actively seeking and unable to obtain suitable work, and was registered for work, and continued to report at an employment office as provided in paragraphs (a) and (b) of subsection (1) of ORS 657.155, the administrator in that event may find him eligible for benefits subsequent to such eight weeks."

*Portland Cement Co. v. Cal. Unemp. Ins. Appeals Board,* 178 Cal App 2d 263, 3 Cal Rptr 37 (1960), *John S. Barnes Corp. v. Board of Review,* 55 Ill App 2d 102, 204 NE2d 20 (1965), *Matison v. Hutt,* 85 Wash 2d 836, 539 P2d 852 (1976). Some states have moved from that position. The Supreme Court of New Jersey so held in *Krauss v. A & M Karagheusian,* 13 NJ 447, 100 A2d 277 (1953), by statutory construction based on judicial divination of legislative intent, but the New Jersey Legislature then amended the statute to demonstrate its intent otherwise. *See* 43 NJSA § 21-5(a). Similarly, the Pennsylvania Supreme Court which decided the leading case construing "good cause" to include personal reasons, *Bliley Electric Co. v. Unemployment Comp. Bd. of Rev.,* 158 Pa Super 548, 45 A2d 898 (1946), shortly thereafter withdrew substantially from that position by allowing personal reasons to qualify only in exceptional cases, *Sun Shipbuilding & Dry D. Co. v. Unemployment Comp. Bd.,* 358 Pa 224, 56 A2d 254 (1948), and the Pennsylvania Legislature has since amended the statute to exclude marital, filial and domestic reasons from good cause. *Spotts v. Unemployment Compensation Bd. of Review,* 176 Pa Super 484, 109 A2d 212 (1954).

The contrary view, that personal reasons do not constitute good cause where the statute is silent, has been adopted on the basis of the general purpose of the legislation in *Nashua Corp. v. Brown,* 99 NH 205, 108 A2d 52 (1954), and *Woodmen of the World Life Ins. Society v. Olsen,* 141 Neb 776, 4 NW2d 923 (1942), *Stone Mfg. Co. v. S. C. Em. Security Comm.,* 219 SC 239, 64 SE2d 644 (1951). The decision in the latter case, however, expressly declined to rule out the possibility that exceptional personal reasons might qualify. This qualification, like that achieved from the other direction in Pennsylvania, would be exceedingly difficult to define or apply.

We have indicated in dicta that statutory good cause must be "objectively related to the employment," *Garrelts v. Employment Division,* 21 Or App 437, 440,

535 P2d 115 (1975), *Brotherton v. Morgan,* 17 Or App 435, 438, 522 P2d 1210 (1974), and we now so hold.

■  The intent of the Oregon law is clear. In simplified summary, the employe who leaves due to the acts of the employer receives benefits immediately, but the employe who leaves for reasons within the employe's own control does not receive benefits until the passage of eight weeks unless eligibility is re-established by a period of remunerative employment. Subsection (3) eases the hardship for those who leave for specific marital reasons by allowing them to re-establish eligibility with a shorter term of remunerative employment than those who leave for other reasons under their own control. This necessarily implies that nonmarital personal reasons, since they do not qualify for the favored treatment accorded to marital reasons, are among the class of all other personal reasons as enumerated in subsection (2). To hold otherwise would be to construe subsection (3) as a penalty rather than a benefit.[2]

■  Therefore, we construe "good cause" to refer only to cause which is objectively related to employment rather than arising solely from the employe's personal life. Accordingly, petitioner's termination of employment for reasons personal to her must be considered to have occurred "voluntarily" and "without good cause." This conclusion is consistent with a legislative intent apparent from ORS ch 657 as a whole to protect workers from involuntary unemployment by creation of a program whereby employers fund a pool to alleviate the fiscal hardship of unemployed willing workers. The act provides no evidence of an intent to

---

[2] Subsection (3) was adopted subsequent to some legislative trimming of ORS 657.176(2)(c) which would have otherwise suggested a contrary result. The phrase in the original version "reasonable cause attributable to his employer," Oregon Laws 1935 (Special Session), ch 70, § 4(b)(2), became "good cause, if so found by the commission," Oregon Laws 1937, ch 398, § 4, and the present form was adopted thereafter, Oregon Laws 1955, ch 655, § 9, but prior to the present subsection (3), Oregon Laws 1959, ch 643, § 1.

require employers to finance a general welfare program which insures workers against the fiscal consequences of all of their private problems and desires.

In light of our disposition of the legal issue as if petitioner's factual position were proved, it is unnecessary to deal with petitioner's objections to the fact-finding process.

The order of the Employment Appeals Board is affirmed.

Affirmed.