Argued October 20, 1978, affirmed January 29, 1979

# WAIDE, *Petitioner,*
## *v.*
# EMPLOYMENT DIVISION et al, *Respondents.*
## (No. 78-AB-673, CA 11550)

589 P2d 1138

Rebecca G. Orf, Jackson County Legal Services, Medford, argued the cause and filed the brief for petitioner.

Mary Deits, Assistant Attorney General, Salem, argued the cause for respondent Employment Division. On the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

No appearance for respondent Minute Markets.

Before Thornton, Presiding Judge, and Tanzer and Buttler, Judges.

THORNTON, P. J.

## THORNTON, P. J.

Claimant appeals from a determination of the Employment Appeals Board (Board) affirming the referee's denial of unemployment compensation. Claimant was denied unemployment compensation both because she voluntarily left work without good cause, ORS 657.176(2)(c) and because she was not available for work, ORS 657.155(1)(c).[1]

According to the factual findings below, supported by the record, claimant had been satisfactorily employed in a convenience market as a manager/cashier from September 8, 1976, through December 20, 1977, at a salary of $700 per month. Because of claimant's managerial responsibilities, she was required to work 60 hours per week.[2]

Claimant did not attend college during the fall or winter quarters in the 1976-77 school year, but enrolled in 12 units during the spring quarter. Claimant attended school during the fall quarter, 1977, carrying a 15-unit load, and determined that she could graduate by the end of that school year if she enrolled in 21 units each for the winter and spring quarters, and took 2 units in the summer. Accordingly, claimant notified her employer that she would have to terminate her employment in order to attend school. According to her own testimony, however, she also quit her job in order to take a new job as secretary to acquaintances of hers, performing work in their fence construction business. She was employed 40 hours per week, flexible hours,

---

[1] It is unclear why the referee and the Board reached the availability issue. If claimant is disqualified properly under ORS 657.176(2)(c) for voluntarily leaving work without good cause, she would be ineligible to receive benefits because of that disqualification, ORS 657.155(1)(e). Because of our resolution of the good cause issue, we do not address the issue of availability.

[2] Claimant testified that when she took the job she understood it to require 55 hours per week. Because of her managerial position, however, she often had to work extra hours because of shortages of personnel. She was supposed to take the extra time in vacation, but because of the employe shortages she did not avail herself of that option. Claimant was responsible for hiring employes.

[ 123 ]

at $600 per month, and commenced work on January 3, 1977. Due to inclement weather and lack of business, claimant was laid off on the new job after working for only one week.

Because of the statutory requirement that a person be employed a minimum of four weeks at a pay rate at least equal to the "weekly benefit amount" if she left previous employment without good cause, ORS 657.176(2)(c), we are called upon to decide the question of whether claimant left her original employment for good cause. We agree with the Board's conclusion that she voluntarily left work without good cause, but we base our conclusion on different analytical foundations.

The Board concluded:

"* * * From this record we are more convinced that the claimant's separation from work was caused by her class schedule which was to begin in January 1978 and encompass 21 hours of credit per quarter. * * *"

Claimant, on the other hand, contends that we should not look beyond the fact that she left one full-time job for another full-time job; that her nonemployment activities are irrelevant in that context.

It is apparent that the Board, based largely on this court's interpretation of "cause," attempted to factor out all of the possible causes of claimant's leaving. Such an approach, however, is fraught with great difficulties. Any determination that a worker who changes his, or her, job as motivated by a single purpose is most likely in error, and a determination of "predominant" and "subordinate" causes is, if possible at all, extremely difficult. It is for this reason that we have attempted to focus consideration of "cause" on the employment from which the employe departed.

Generally, of course, a person who leaves one full-time job for another full-time job does not have any reason to defend his "cause" for leaving; he is employed. Only when the second job terminates in less

than four weeks does the issue arise. In that situation it makes no difference whether the employe left because the second job offered more pay for fewer hours, because it offered more vacation time, because it offered more training, or because it offered more free time to engage in desired nonemployment pursuits. All of these reasons are "personal," and unrelated to the working conditions of the original job. Although it may be argued that leaving one job for more advantageous employment is "good cause,"[3] we reach the opposite conclusion.

It is axiomatic that one may not voluntarily terminate employment for purely personal reasons and remain eligible for unemployment compensation. *Arias v. Employment Div.,* 26 Or App 841, 554 P2d 538 (1976); *Koach v. Employment Division,* 25 Or App 585, 549 P2d 1301, *rev den* (1976). Furthermore, in order to voluntarily terminate for good cause, one must be able to articulate a cause objectively related to the employment. *Arias v. Employment Div., supra; Garrelts v. Employment Division,* 21 Or App 437, 535 P2d 115 (1975); *Brotherton v. Morgan,* 17 Or App 435, 522 P2d 1210 (1974). The cause so articulated must be such as would compel a reasonably prudent person to quit. *Wilton v. Employment Div.,* 26 Or App 549, 553 P2d 1071 (1976). Stated differently, the standard is

---

[3] The referee's opinion contains the following:

"* * * Generally leaving work to accept more advantageous employment is not disqualifying if that employment fails to materialize or continue through no fault of claimant. * * *"

While such may be the rule in those states with specific statutory allowances, see, for example, Colorado's "better job" provision in CRS 82-4-8(4)(g) (1963) (perm supp 1969), construed in *Harding v. Indust. Comm.,* 183 Colo 52, 515 P2d 95 (1973), that rule has never been articulated in the courts of this state, nor to our knowledge has any jurisdiction squarely so held, absent statutory provisions on point. Dicta to the contrary are contained in *Steinberg v. Unempl. Comp. Bd. of Review,* 34 Pa Commw Ct 294, 383 A2d 1284 (1978), and *U.C.B.R. v. Pa. Power & Light Co.,* 23 Pa Commw Ct 220, 351 A2d 698 (1976). Although we did not address the specific issues raised here, our opinion in *Putman v. Employment Div.,* 36 Or App 267, 584 P2d 348 (1978), rejected the proffered rule in a context where the "more advantageous employment" failed to materialize.

" '* * * such a cause as justifies an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed * * * '." *Stevenson v. Morgan,* 17 Or App 428, 432, 522 P2d 1204 (1974), *citing Fajardo v. Morgan,* 15 Or App 454, 459, 516 P2d 495 (1973).

We fully recognize that claimant here did not intend to join the ranks of the unemployed. However, the standard for voluntarily terminating employment with good cause must, if it is to be a standard at all, be consistently applied. There was nothing inherent in claimant's original employment situation which was so objectionable that it would have justified quitting. Nor would a reasonably prudent person employed under similar conditions have quit merely because the job required 60 hours per week.[4] It is irrelevant whether claimant had her 40-hour-week job arranged in advance, or whether she obtained employment after a lengthy search; neither fact affects the conditions of the original employment.

The dilemmas of this case have arisen solely because the second job failed to last four weeks. An employe who desires to change jobs for any reason, independent of onerous conditions of the original position, assumes a risk that the second job may not last.

Affirmed.

---

[4]We should not be understood to say that in all circumstances a 60-hour-work week is entirely reasonable. Here, however, claimant understood the lengthy hours to be part of the responsibility of her managerial position prior to accepting the job. *See* n 2, *supra.*