PATRICK BURKE, Plaintiff-Appellee, v. BOARD OF REVIEW, ILLINOIS DEPARTMENT OF LABOR, Defendants-Appellants (McCartin, McAuliffe Mechanical Contractors, Inc., Defendant).

Second District No. 84—170

Opinion filed May 1, 1985.

Neil F. Hartigan, Attorney General, of Springfield (Thomas P. Marnell, Assistant Attorney General, of Chicago, and John Steven Cole, Special Assistant Attorney General, of Elmhurst, of counsel), for appellants.

Kathleen P. Konicki and John P. Ridge, both of Hinsdale, for appellee.

JUSTICE SCHNAKE delivered the opinion of the court:

The defendants, the Board of Review (Board), and the Illinois Department of Labor (Department), appeal from an order of the circuit court, entered in an administrative review proceeding, that reversed the Board's determination that the plaintiff, Patrick Burke, was not qualified for unemployment insurance benefits under the provisions of section 601(A) of "An Act in relation to a system of unemployment insurance" (Unemployment Insurance Act) (Ill. Rev. Stat. 1981, ch. 48, par. 431(A)). The Board argues that the trial court's order must be reversed for two reasons: (1) that the court below improperly considered and relied upon evidence outside the administrative record; and (2) that the Board's determination—that the plaintiff was not entitled to unemployment insurance benefits—was not contrary to the manifest weight of the evidence.

The plaintiff had been employed by McCartin, McAuliffe Mechanical Contractors, Incorporated (McCartin), as a pipefitter at the Dresden nuclear power station for three months prior to November 1, 1982. Subsequently, Burke applied for unemployment compensation benefits. In his application Burke stated that he left his job with McCartin "to take another job because he felt that conditions were hazardous at Dresden due to a lack of safety precautions."

On December 15, 1982, an Illinois Department of Labor claims adjudicator determined that the plaintiff was ineligible for unemployment insurance benefits. The adjudicator found that the claimant voluntarily terminated his job to take another position that did not materialize. The adjudicator decided that the termination was not attributable to the employer and concluded, therefore, that the plaintiff was not qualified for unemployment insurance benefits under the provisions of section 601A of the Unemployment Compensation Act.

Approximately two weeks later, the plaintiff filed a timely appeal from this determination with the appeals section of the Unemployment Insurance Division of the Department, and on January 8, 1983, he was granted a formal hearing before a Department hearings referee. At this hearing Burke stated that he felt he had another job (with Amoco Oil) when he quit his position with McCartin at Dresden, but the new job with Amoco Oil did not materialize. He related, also, that he orally notified his supervisor of his intention to quit, but admitted (1) that he failed to provide any reason for his leaving, and (2) that he did not report the allegedly unsafe conditions to his employer so that they could be rectified. He testified, in addition, that he feared

he would be branded a troublemaker if he complained about the purportedly hazardous conditions. Also, he remarked that his supervisors were already cognizant of the unsafe conditions. Finally, Burke claimed that before he quit two fellow employees were found to be contaminated with radiation upon departing the facility. As a result, his co-workers lost some clothing and had to take a shower. However, he himself was not found to be contaminated.

The referee was also presented with evidence, in the form of a letter from the plaintiff's supervisor at McCartin, that the plaintiff did not mention to him that he was leaving due to hazardous working conditions; rather, Burke merely mentioned that he was quitting.

On January 31, 1983, the hearings referee denied the plaintiff's claim for benefits under section 601(A). In his findings of fact, the referee stated that the plaintiff left his job "because he considered that areas of radiation were still unknown and as such the work areas were hazardous." The referee found, also, that the claimant hoped to start a new job at the time of his departure from McCartin, but the new position did not materialize. Lastly, the referee found that Burke "did not discuss the reasons for his dissatisfaction with his work with his supervisor before leaving."

In reaching his decision to affirm the determination of the claims adjudicator, the referee concluded:

"Since the claimant failed to discuss the reasons for his dissatisfaction with his work with his supervisors in an effort to try to remedy them before leaving he failed to use all reasonable means to remain employed as he was obliged to do [,] and therefore his leaving must be held to be without good cause attributable to the employer and subjects the claimant to the disqualification for benefits *** [under] Section 601A of the Act."

The plaintiff appealed to the Department's Board of Review, which affirmed the referee's decision on April 29, 1983, stating that the referee's findings of fact and decision found support in the record and the law.

On June 3, 1983, the plaintiff filed the present action for judicial review of the Board's decision. (See Ill. Rev. Stat. 1981, ch. 110, par. 3—101 *et seq.*) Thereafter, the plaintiff filed an amended complaint for administrative review, appending as exhibits to it certain news releases and letters from the Nuclear Regulatory Commission (NRC). The Board and the Department moved to strike the exhibits on the ground that they had not been made a part of the administrative record previously.

The trial court reviewed the amended complaint and all the ex-

hibits attached to it. On June 24, 1984, the court below denied the motion to strike, remarking that the materials were relevant to the proceedings and, therefore, should be part of the record. After determining that the plaintiff had reasonable cause to terminate his employment, the court reversed the Board's decision. The Board and the Department appealed in timely fashion (see Ill. Rev. Stat. 1981, ch. 110, par. 3—112).

 █ The Board's first contention is that the trial court erred when it admitted and considered the exhibits, in the form of news releases and letters from the NRC, the plaintiff appended to his amended complaint for administrative review. The Board concludes that the trial court's improper reliance on evidence outside the administrative record amounted to reversible error.

The trial court reviewed the appended exhibits, denied the motion of the Board and the Department to strike them, stated that the materials were relevant to the proceedings, and then made them part of the record.

Section 3—110 of the Code of Civil Procedure provides, with respect to administrative review, that "[n]o new or additional evidence in support of or in opposition to any finding, order determination or decision of the administrative agency shall be heard by the court" (Ill. Rev. Stat. 1981, ch. 110, par. 3—110). (*Village of Western Springs v. Pollution Control Board* (1982), 107 Ill. App. 3d 864, 870.) During an administrative review proceeding, the circuit court is confined to a consideration of the evidence submitted during the administrative hearing and may not entertain additional evidence or conduct a hearing *de novo*. (*Pipe Trades, Inc. v. Rauch* (1954), 2 Ill. 2d 278, 291; *Northwest Hospital v. Illinois Health Facilities Planning Board* (1978), 59 Ill. App. 3d 221, 227; *Lamar v. Illinois Racing Board* (1977), 55 Ill. App. 3d 640, 647; *Monsanto Co. v. Pollution Control Board* (1976), 39 Ill. App. 3d 333, 336, *rev'd on other grounds* (1977), 67 Ill. 2d 276; see *Tri-America Oil Co. v. Department of Review* (1982), 117 Ill. App. 3d 774, 777, *aff'd* (1984), 102 Ill. 2d 234.) Because the exhibits were not offered into evidence before the administrative agency, the trial court could not properly consider them. (*Cf. Kellenbenz v. Commonwealth Unemployment Compensation Board of Review* (1983), 71 Pa. Commw. 468, 469 n.2, 454 A.2d 1202, 1202 n.2 (a court of review may not consider evidence that was not presented before the administrative agency).) The court's consideration of these exhibits was not harmless error. See, *e.g., Lamar v. Illinois Racing Board* (1977), 55 Ill. App. 3d 640, 647.

Rather than hearing or considering new evidence, thereby at-

tempting to correct any alleged deficiency in the evidence presented to the administrative agency, the trial court should have remanded the matter to the Department for a hearing to take additional evidence (see Ill. Rev. Stat. 1981, ch. 110, pars. 3—111(a)(6), (7)). *Rock Island Metal Foundry, Inc. v. City of Rock Island* (1953), 414 Ill. 436, 439-40; see *Strohl v. Macon County Zoning Board* (1952), 411 Ill. 559; *Appel v. Zoning Board of Appeals* (1970), 120 Ill. App. 2d 401, 404-05.

The defendants' additional contention is that the manifest weight of the evidence supports the Board's decision that the plaintiff was not eligible for unemployment insurance benefits because he voluntarily left his job without good cause attributable to his employer. Therefore, they concluded that the trial court improperly reversed the decision of the Board. More specifically, the defendants argue that the plaintiff failed to establish either that a health hazard existed or that he had a firm job offer.

██ █ The cardinal purpose of the Illinois Unemployment Insurance Act (Ill. Rev. Stat. 1981, ch. 48, par. 300 *et seq.*) is to provide compensation benefits to unemployed individuals in order to alleviate their economic distress that was occasioned by involuntary unemployment. (*Wadlington v. Mindes* (1970), 45 Ill. 2d 447, 452, *appeal dismissed* (1970), 400 U.S. 935, 27 L. Ed. 2d 242, 91 S. Ct. 252; *Clark v. Board of Review* (1984), 126 Ill. App. 3d 559, 561; *Lipman v. Board of Review* (1984), 123 Ill. App. 3d 176, 179.) The receipt of unemployment insurance benefits in this State is a conditional right, and the claimant bears the burden of establishing eligibility before the agency. (*Clark v. Board of Review* (1984), 126 Ill. App. 3d 559, 561; *Lipman v. Board of Review* (1984), 123 Ill. App. 3d 176, 181; *Crocker v. Department of Labor* (1984), 121 Ill. App. 3d 185, 188; *Thompson v. Board of Review* (1983), 120 Ill. App. 3d 1, 7 (Nash, J., dissenting); *James v. Department of Labor* (1983), 119 Ill. App. 3d 524, 527.) In order to be eligible for benefits, however, claimants must satisfy the terms and conditions the Unemployment Compensation Act prescribes. (*Clark v. Board of Review* (1984), 126 Ill. App. 3d 559, 561.) It is clear that the Act must be construed liberally for the benefit of unemployed workers. *Davis v. Board of Review* (1984), 125 Ill. App. 3d 67, 72; *Jackson v. Board of Review* (1984), 121 Ill. App. 3d 963, 967, *appeal allowed* (1984), 101 Ill. 2d 546; *Garland v. Department of Labor* (1984), 121 Ill. App. 3d 562, *aff'd* (1984), 104 Ill. 2d 383.

Section 601(A) of the Act provides, as relevant to this appeal, that a claimant "shall be ineligible for benefits for the week in which he has left work voluntarily without good cause attributable to the employing unit ***." (Ill. Rev. Stat. 1981, ch. 48, par. 431(A).) The provi-

sions of this section are subject to five exceptions (Ill. Rev. Stat. 1981, ch. 48, par. 431(B)), none of which is apposite here. The statute, however, does not define "good cause." *Davis v. Board of Review* (1984), 125 Ill. App. 3d 67, 72.

■■ ■ Once the legal standard of good cause is established, the adjudication whether the particular conduct satisfied that test ordinarily is a factual matter. (*Thompson v. Board of Review* (1983), 120 Ill. App. 3d 1, 4.) It is axiomatic that an agency's findings concerning factual questions are *prima facie* true and correct and should not be disturbed on review unless they are contrary to the manifest weight of the evidence. (Ill. Rev. Stat. 1981, ch. 110, par. 3—110; *Garland v. Department of Labor* (1984), 104 Ill. 2d 383, 392; *Gregory v. Bernardi* (1984), 125 Ill. App. 3d 376, 381; *Crocker v. Department of Labor* (1984), 121 Ill. App. 3d 185, 189; *Thompson v. Board of Review* (1983), 120 Ill. App. 3d 1, 4.) Given its limited function in an unemployment compensation case, the judiciary will not reweigh the evidence adduced at an administrative hearing (120 Ill. App. 3d 1, 4) or substitute its judgment for that of the agency unless the administrative findings are without substantial support in the record (125 Ill. App. 3d 376, 381; see *James v. Department of Labor* (1983), 119 Ill. App. 3d 524, 527). (See *Clark v. Board of Review* (1984), 126 Ill. App. 3d 559, 562.) A finding is against the manifest weight of the evidence if an opposite conclusion is clearly evident. *Doran v. Department of Labor* (1983), 116 Ill. App. 3d 471, 474; *Meyers v. Illinois Department of Public Aid* (1983), 114 Ill. App. 3d 288, 291; see *Thompson v. Board of Review* (1983), 120 Ill. App. 3d 1, 5; *Clark Oil & Refining Corp. v. Golden* (1983), 114 Ill. App. 3d 300, 308.

Because the term "good cause" as used in section 601(A) of the Unemployment Compensation Act is not defined there, and in light of the fact that we are unable to find an Illinois opinion construing that phrase in the context of the Act, we advert to case law from foreign jurisdictions. Initially, it is noted that this State's appellate court has determined that Pennsylvania's unemployment compensation statute is similar to the Illinois enactment and has relied upon Pennsylvania jurisprudence in adjudicating cases concerning "voluntary leaving" under section 601(A). See, *e.g., Minfield v. Bernardi* (1984), 122 Ill. App. 3d 97, 102-03; *Keystone Steel & Wire Division, Keystone Consolidated Industries v. Department of Labor* (1976), 37 Ill. App. 3d 704, 706-08.

The Pennsylvania Supreme Court has defined "cause of a necessitous and compelling nature," which is synonymous with "good cause," in the following terms:

" 'they connote, as minimum requirements, real circumstances, substantial reasons, objective conditions, palpable forces that operate to produce correlative results, adequate excuses that will bear the test of reason, just grounds for action, and always the element of good faith.' " (*Deiss v. Unemployment Compensation Board of Review* (1977), 475 Pa. 547, 553, 381 A.2d 132, 135, quoting *Sturdevant Unemployment Compensation Case* (1946), 158 Pa. Super. 548, 556, 45 A.2d 898, 903.)

The court in *Deiss* stated also:

" ' "good cause" for voluntarily leaving one's employment (i.e. that cause which is necessitous and compelling) results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner.' " *Deiss v. Unemployment Compensation Board of Review* (1977), 475 Pa. 547, 553, 381 A.2d 132, 135, quoting *Taylor v. Unemployment Compensation Board of Review* (1977), 474 Pa. 351, 358-59, 378 A.2d 829, 832-33; accord, *Genetin v. Commonwealth Unemployment Compensation Board of Review* (1982), 499 Pa. 125, 128 n.1, 451 A.2d 1353, 1355 n.1.

A recent Oregon opinion has said that good cause "must be such as would compel a reasonably prudent person to quit." Stated in slightly different terms, the test is whether such cause justifies an employee in voluntarily departing the ranks of the employed and in joining the ranks of the unemployed. *Waide v. Employment Division* (1979), 38 Ore. App. 121, 125-26, 589 P.2d 1138, 1140.

■ This court has recognized "that good cause may consist of a reasonable subjective fear of harm to an employee's health, even absent the advice of a physician" (see Ill. Rev. Stat. 1981, ch. 48, par. 431(B)(1)). (*Davis v. Board of Review* (1984), 125 Ill. App. 3d 67, 72, citing *Rabago v. Unemployment Insurance Appeals Board* (1978), 84 Cal. App. 3d 200, 210-11, 148 Cal. Rptr. 499, 506-07.) It is clear, also, that an employee has good cause for terminating his employment if his assigned work jeopardizes his health or safety. (*Stormer v. Commonwealth Unemployment Compensation Board of Review* (1977), 32 Pa. Commw. 220, 224, 378 A.2d 1037, 1039.) In order to demonstrate that health is a compelling reason for terminating employment, the claimant must:

"(1) offer competent testimony that adequate health reasons existed to justify termination at the time of termination; (2) have informed the employer of the health problem, and (3) be available, where a reasonable accommodation is made by the

employer, for work which is not inimical to his health." (*Dornblum v. Commonwealth Unemployment Compensation Board of Review* (1983), 77 Pa. Commw. 547, 549, 466 A.2d 747, 749; see *Genetin v. Commonwealth Unemployment Compensation Board of Review* (1982), 499 Pa. 125, 130-31, 451 A.2d 1353, 1356. See generally *Deiss v. Unemployment Compensation Board of Review* (1977), 475 Pa. 547, 553, 381 A.2d 132, 135; *Ruckstuhl v. Commonwealth Unemployment Compensation Board of Review* (1981), 57 Pa. Commw. 302, 305, 426 A.2d 719, 721.) The claimant must adduce some medical evidence to support the allegations concerning the alleged health problems, and the failure to satisfy any one of the three conditions explicated above will bar a claim for unemployment compensation (*Dornblum v. Commonwealth Unemployment Compensation Board of Review* (1983), 77 Pa. Commw. 547, 549, 466 A.2d 747, 749). *Ruckstuhl v. Commonwealth Unemployment Compensation Board of Review* (1981), 57 Pa. Commw. 302, 305, 426 A.2d 719, 721.

■ In the case at bar, the plaintiff merely notified his supervisor of his intention to quit; he failed to provide his employer with any reason for his departure and did not report the purportedly unsafe conditions to his employer. The plaintiff did not seek medical treatment or advice, and his fear for his health was predicated solely upon what had happened to two fellow workers. In light of this conduct, he was not entitled to unemployment benefits under section 601(A), for he did not satisfy his burden of establishing good cause attributable to his employer based on health reasons. His conduct did not meet the standard of ordinary common sense; in short, he did not act in good faith. (See, *e.g., Moore v. Doyal* (La. App. 1970), 240 So. 2d 17; *Brown v. Unemployment Compensation Board of Review* (1952), 170 Pa. Super. 186, 85 A.2d 605.) This is not a case in which the plaintiff informed his employer of a potential health problem and submitted documentary evidence to support the claim. *Cf. Dornblum v. Commonwealth Unemployment Compensation Board of Review* (1983), 77 Pa. Commw. 547, 549, 466 A.2d 747, 749.

■ The well-settled rule is that although the mere possibility of obtaining another job is an insufficient basis upon which to demonstrate the existence of good cause to terminate employment (*Kellenbenz v. Commonwealth Unemployment Compensation Board of Review* (1983), 71 Pa. Commw. 468, 470, 454 A.2d 1202, 1203; *O'Connor v. Commonwealth Unemployment Compensation Board of Review* (1980), 50 Pa. Commw. 573, 577, 413 A.2d 458, 460; *Unemployment Compen-*

*sation Board of Review v. Pennsylvania Power & Light Co.* (1976), 23 Pa. Commw. 220, 223, 351 A.2d 698, 699; *Eckenrod v. Commonwealth Unemployment Compensation Board of Review* (1974), 15 Pa. Commw. 166, 170, 325 A.2d 320, 322; *Kowal v. Unemployment Compensation Board of Review* (1961), 196 Pa. Super. 621, 622, 176 A.2d 151, 152; see *Putman v. Employment Division* (1978), 36 Ore. App. 267, 269-70, 584 P.2d 348, 349; *Cunningham v. Unemployment Compensation Board of Review* (1976), 25 Pa. Commw. 134, 137, 358 A.2d 147, 149), the receipt and acceptance of a firm offer of employment does constitute good cause for terminating the employee's current employment (*Union Bank & Trust Co. v. Commonwealth Unemployment Compensation Board of Review* (1978), 38 Pa. Commw. 137, 139-40, 391 A.2d 1342, 1343; see *Eckenrod v. Commonwealth Unemployment Compensation Board of Review* (1974), 15 Pa. Commw. 166, 170, 325 A.2d 320, 322). (*Township of North Huntingdon v. Commonwealth Unemployment Compensation Board of Review* (1982), 69 Pa. Commw. 187, 189, 450 A.2d 768, 769; *Steinberg v. Commonwealth Unemployment Compensation Board of Review* (1978), 34 Pa. Commw. 294, 297, 383 A.2d 1284, 1286.) In order to satisfy the good cause requirement, the offer of employment must be definite. *Township of North Huntingdon v. Commonwealth Unemployment Compensation Board of Review* (1982), 69 Pa. Commw. 187, 189, 450 A.2d 768, 769.

The only evidence the plaintiff presented to the referee during the administrative hearing with respect to the matter of a job offer was that he felt he had another job with Amoco Oil at the time he terminated his current position with McCartin; however, the new job failed to materialize. The referee found that the plaintiff hoped to start a new job at the time of his departure from McCartin, but the new position did not come into existence.

It is clear that the plaintiff's testimony failed to establish that his anticipated position with Amoco Oil amounted to a firm job offer that was definite. (*Cf. Township of North Huntingdon v. Commonwealth Unemployment Compensation Board of Review* (1982), 69 Pa. Commw. 187, 450 A.2d 768 (offer of employment included a specific position at a fixed rate of pay and with an established commencement date); *Union Bank & Trust Co. v. Commonwealth Unemployment Compensation Board of Review* (1978), 38 Pa. Commw. 137, 391 A.2d 1342 (claimant's son assured her of a job with his company, and she worked at the position for 2½ months without compensation); *Steinberg v. Commonwealth Unemployment Compensation Board of Review* (1978), 34 Pa. Commw. 294, 296, 383 A.2d 1284, 1285 (the

claimant terminated his position and accepted a higher paying job elsewhere, where he worked until his position was eliminated).) Rather, it appears from the record in this case that the referee was justified in concluding that the reason the plaintiff gave for leaving his position with McCartin was the mere possibility or expectation of securing other employment with Amoco Oil. Given the facts of this case, the plaintiff's representation in this regard did not constitute good cause for terminating his employment with McCartin. See, *e.g.,* *Putman v. Employment Division* (1978), 36 Ore. App. 267, 584 P.2d 348; *Cunningham v. Unemployment Compensation Board of Review* (1976), 25 Pa. Commw. 134, 358 A.2d 147; *Eckenrod v. Commonwealth Unemployment Compensation Board of Review* (1974), 15 Pa. Commw. 166, 325 A.2d 320; *Kowal v. Unemployment Compensation Board of Review* (1961), 196 Pa. Super. 621, 176 A.2d 151.

Because the findings and decision of the administrative agency in this cause are not contrary to the manifest weight of the evidence, the trial court erred in reversing the determination of the Board that the plaintiff had not established his entitlement to unemployment insurance benefits under the provisions of section 601(A) of the Act.

For the reasons stated, the judgment of the trial court is reversed.

Reversed.

HOPF and STROUSE, JJ., concur.