ELIZABETH L. HAMILTON, Plaintiff-Appellee, v. THE BOARD OF RE-
VIEW OF THE DEPARTMENT OF LABOR, Defendant-Appellant (M.A.L.
Company, Defendant).

Second District   No. 2—84—0547

Opinion filed August 30, 1985.

Neil F. Hartigan, Attorney General, of Springfield (Vincenzo Chimera, Assistant Attorney General, of Chicago, of counsel), for appellant.

Thomas Loizzo, of Kell, Neull & Loizzo, of Woodstock, for appellee.

JUSTICE STROUSE delivered the opinion of the court:

The defendant, the Board of Review (Board) of the Illinois Department of Labor (Department), appeals from an order of the circuit court, entered in an administrative review proceeding, that reversed the Board's determination that the plaintiff, Elizabeth Hamilton, did not qualify for unemployment insurance benefits under the provisions of section 601(A) of "An Act in relation to a system of unemployment insurance" (Unemployment Insurance Act) (Ill. Rev. Stat. 1983, ch. 48, par. 431(A)). On appeal, the Board argues that the trial court's order must be reversed because the Board's determination—that the plaintiff was not entitled to unemployment benefits for the reason that she voluntarily left her job without good cause attributable to her employer—was not contrary to the manifest weight of the evidence.

M.A.L. Company employed the plaintiff as a shipping clerk from July 1, 1979, through August 6, 1982. On August 10, 1982, the plaintiff filed a claim for unemployment insurance benefits with the Division of Unemployment Insurance of the Illinois Department of Labor. In her application Hamilton stated that she was dismissed from her job because she refused to work overtime on August 7, 1982. In response, the employer submitted a statement setting forth its version of the instant controversy.

On August 26, 1982, a claims adjudicator of the Department determined that the claimant voluntarily terminated her employment "without good cause attributable to the employer." Therefore, the adjudicator concluded that the plaintiff did not qualify for unemployment insurance benefits under the provisions of section 601(A) of the Unemployment Insurance Act (Ill. Rev. Stat. 1983, ch. 48, par. 431(A)).

The following day the plaintiff filed an appeal from this determination with the appeals section of the Unemployment Insurance Division of the Department, and on September 22, 1982, the Department granted the plaintiff a formal hearing before a hearings referee. The following facts were proved at this hearing.

M.A.L. Company, the employer, is involved in the automotive industry business; July and August of each year comprise the company's peak period of activity due to the annual changes the industry makes in

models at that time. The plaintiff was a shipping clerk for her employer as an hourly employee from July 1, 1979, until June 28, 1982. On June 28, her employer offered to place her on salary with a salary increase, or she could remain on the hourly rate. She elected to go on salary.

The employer considered the plaintiff to be a very good or excellent employee who had always worked overtime in the past when requested to do so. The plaintiff worked 14.3 hours overtime from July through December 26, 1981, and a total of 16 hours overtime from July 1, 1981, through June 30, 1982. During the company's peak period in 1981, the claimant worked only 2.4 hours overtime. However, during the one-month period after she became a salaried employee, the plaintiff worked 36.9 hours overtime. The evidence is that, with respect to overtime work, a salaried employee receives less compensation than an hourly worker does, although for regular work she receives more.

On Friday morning, August 6, 1982, the plaintiff requested that M.A.L. Company return her to an hourly rate of pay and that the change be made retroactively. The employer agreed to return the plaintiff to her status as an hourly employee effective the following Monday, because Monday commenced a new payroll period. As an hourly employee, the plaintiff's daily hours would only be from 8:30 a.m. to 5 p.m., and she would not have to work overtime. The plaintiff agreed to this arrangement because (1) she felt she was not being compensated fairly for her overtime labor; (2) her husband was dissatisfied with the number of overtime hours she was working; and (3) the number of overtime hours affected the plaintiff's children.

Sometime between 2 and 3 p.m. on Friday, a representative of M.A.L. Company asked the plaintiff whether she had contacted the plant superintendent to see what time the shipping documents, for which the plaintiff was responsible, would be available on Saturday morning. According to the employer, the plaintiff responded that she would not work any overtime and was not coming to work on Saturday. Shortly thereafter, the employer held a meeting with the plaintiff and informed her that overtime work was a condition of the job she had accepted; that she had to live by the salaried conditions until Monday; and that it was necessary for her to work on Saturday due to shipping requirements. M.A.L. Company informed the plaintiff at this time that if she did not appear for work on Saturday or Sunday, the company would consider her to have resigned her position with the employer. The plaintiff testified that she was told she would be discharged from employment if she did not work on Saturday. The employer related that the company had shipped on Saturdays previously and that the plaintiff was aware of the work schedule during peak periods.

A short while later, the plaintiff who claimed to be physically and mentally exhausted as a result of having worked overtime over the past month and 8½ hours that day, asked if she could go home a little early; M.A.L. Company granted the plaintiff's request. The comptroller of the company called her at home Friday evening and told the plaintiff's husband to inform her that she had to be at work on Saturday by 11 o'clock. The husband testified that the caller stated that the plaintiff's employment would be terminated if she did not show up for work on Saturday. The comptroller denied that he told the plaintiff's husband that the plaintiff would be discharged if she did not work the following day.

On Saturday morning, plaintiff telephoned Mary Lennon, the office manager of M.A.L. Company, at her home and informed her that she would not report to work that day because she was emotionally upset and Ms. Lennon, who was pressed for time because she was about to depart on vacation, responded "okay, fine." The plaintiff did not report for work on Saturday or Sunday. The employer viewed the plaintiff's failure to appear for work over the weekend as an indication that she resigned her position with the company; M.A.L. Company maintained that it did not terminate the plaintiff.

The following Monday, the plaintiff arrived at M.A.L. Company between 8 and 8:30 a.m. and observed that her parking space was occupied, that a girl was working at plaintiff's desk, and that the plaintiff's personal belongings were on a file cabinet next to the desk. The plaintiff was not attired in working clothing. The employer testified that although the plaintiff came into the office, she did not report for work and she was not dressed for work, but she asked a few questions concerning her vacation pay and profit-sharing plan and gave the keys back to M.A.L. Company.

On October 6, 1982, the referee found that the claimant preferred to leave her job rather than work overtime on August 7, 1982, because she was emotionally upset. The referee stated that in order for the plaintiff to establish that she left her position involuntarily, she had to demonstrate that she quit because of "compelling circumstances" and because the work conditions became so incompatible with her well-being that the work was rendered unsuitable for her. The referee concluded that the claimant failed to establish the existence of compelling circumstances to leave her work and, therefore, affirmed the determination of the claims adjudicator that the plaintiff was ineligible for benefits under section 601A of the Act.

On March 31, 1983, the Board of Review of the Illinois Department of Labor adopted the referee's factual finding that the claimant left her

job rather than work overtime and affirmed the referee's decision to deny unemployment insurance benefits.

The plaintiff filed the present action for judicial review of the Board's decision (see Ill. Rev. Stat. 1983, ch. 110, par. 3—101 *et seq.*) on April 27, 1983. On May 11, 1984, the circuit court found that the Board's decision was against the manifest weight of the evidence and reversed it. Then, the Board filed a timely notice of appeal.

The Board's sole contention in this court is that the manifest weight of the evidence supports its decision that the plaintiff was not eligible for unemployment insurance benefits because she voluntarily left her job without good cause attributable to her employer (see Ill. Rev. Stat. 1983, ch. 48, par. 431(A)). Therefore, the Board concludes that the trial court improperly reversed the decision of the Board.

■■ In order to obtain compensation benefits under the Illinois Unemployment Insurance Act (Ill. Rev. Stat. 1983, ch. 48, par. 300 *et seq.*), the claimant bears the burden of establishing eligibility. (See *Burke v. Board of Review* (1985), 132 Ill. App. 3d 1094, 1099.) Section 601(A) of the Act provides, in relevant part, that a claimant "shall be ineligible for benefits for the week in which he has left work voluntarily without good cause attributable to the employing unit ***." (Ill. Rev. Stat. 1983, ch. 48, par. 431(A).) The term "good cause," however, is not defined in the statute.

In seeking to define "good cause" in the context of section 601(A) of the Act, this court recently followed a series of Pennsylvania cases construing a similar statute, in *Burke v. Board of Review* (1985), 132 Ill. App. 3d 1094, 1099. We held that an employee has good cause for terminating his employment if his assigned work jeopardizes his health or safety, but that the claimant must: " '(1) offer competent testimony that adequate health reasons existed to justify termination at the time of termination; (2) have informed the employer of the health problem, and (3) be available, where a reasonable accommodation is made by the employer, for work which is not inimical to his health.' " (132 Ill. App. 3d 1094, 1101-02.) The claimant in *Burke* failed to satisfy that burden and, accordingly, was denied unemployment benefits. 132 Ill. App. 3d 1094, 1102.

■ In the present case, the referee found that the claimant preferred to leave work rather than labor overtime on August 7, 1982, because she was emotionally upset. The referee concluded that the plaintiff voluntarily left work without good cause attributable to the employer and, therefore, was not entitled to unemployment insurance benefits under the provisions of section 601(A) of the Unemployment Insurance Act (Ill. Rev. Stat. 1983, ch. 48, par. 431(A)). The Board

adopted the referee's factual finding and legal conclusion. The referee's factual determination is not contrary to the manifest weight of the evidence. The uncontroverted testimony established that the plaintiff refused to work overtime on Saturday, August 7, after her employer informed her (1) that, as a salaried employee, she was required to work overtime, and (2) that M.A.L. Company would deem her failure to work that day as an indication that she had resigned her position with the company. The plaintiff stated that she did not want to work then because she was emotionally upset and physically exhausted. Although the plaintiff presented testimony that her employer informed her that she would be terminated if she did not work overtime on Saturday, the referee resolved this conflict in the testimony in favor of the employer. There is sufficient evidence in the record to sustain the referee's threshhold determination under section 601(A) that the plaintiff left her job voluntarily. When, as here, working conditions were not so manifestly detrimental to the plaintiff's health that they may be viewed as tantamount to a constructive discharge, the claimant's resignation must be deemed to be voluntary. See *Hockaday v. D.C. Department of Employment Services* (D.C. App. 1982), 443 A.2d 8, 10-11.

■ The remaining inquiry is whether the plaintiff's voluntary relinquishment of her job was for good cause attributable to her employer (Ill. Rev. Stat. 1983, ch. 48, par. 431(A)). In this regard, the Board argues that, in light of the particular facts of this case, the plaintiff's refusal to work overtime on Saturday due to her emotional upset and physical exhaustion did not constitute good cause attributable to the employer.

Although no published Illinois decision has addressed an issue under section 601(A) in the current context, the court in *Minfield v. Bernardi* (1984), 122 Ill. App. 3d 97, 102, noted, generally, that dissatisfaction with the number of working hours does not establish good cause. In *Minfield*, the court determined that the claimant was ineligible for benefits under section 601(A) when she terminated her employment because she was dissatisfied with the amount of money she was earning and because her employer would not give her full-time employment. (122 Ill. App. 3d 97, 103.) In reaching its decision, the court stressed that the employer did nothing that altered the terms, conditions, hours, or compensation of the job the plaintiff originally accepted. (122 Ill. App. 3d 97, 103.) However, a substantial, unilateral change in the employment situation may make the job unsuitable, thereby entitling the claimant to benefits even if he or she leaves work voluntarily. (*Davis v. Board of Review* (1984), 125 Ill. App. 3d 67, 72; accord, *Wade v. Hurley* (1973), 33 Colo. App. 30, 33, 515 P.2d 491, 492.)

Here, the employer did not make any unilateral changes in the plaintiff's position as a shipping clerk. Rather, the plaintiff agreed to become a salaried employee; subsequently, the employer acquiesced in the plaintiff's request to return to her original status as an hourly employee, starting on August 9, 1982, the Monday following the plaintiff's refusal to work overtime. Effective that Monday, the plaintiff would not have been required to work overtime, thereby eliminating her disquiet over her current overtime obligations.

At most, the plaintiff merely informed M.A.L. Company that she was emotionally upset and exhausted due to the hours she was required to work overtime. In response, the employer permitted her to leave work early, and agreed to allow the plaintiff to begin work the following Monday as an hourly employee without the requirement of overtime. Nonetheless, the plaintiff declined to work on Saturday, the last day on which she would be required to toil overtime. Significantly, the plaintiff did not seek medical treatment or advice for her condition of exhaustion. It should be noted that this is not a case in which the claimant informed her employer of a potential health problem and submitted documentary evidence to support the claim. (See *Burke v. Board of Review* (1985), 132 Ill. App. 3d 1094, 1102.) Given the present facts and circumstances, we conclude plaintiff's voluntary decision to leave her job was without good cause attributable to the employer. See *Hockaday v. D.C. Department of Employment Services* (D.C. App. 1982), 443 A.2d 8, 11-12; *Waide v. Employment Division* (1979), 38 Ore. App. 121, 126, 589 P.2d 1138, 1140; *Aschenbrenner v. Employment Division* (1977), 29 Ore. App. 345, 346, 563 P.2d 757, 759; *Elishinnawy v. Commonwealth Unemployment Compensation Board of Review* (1974), 12 Pa. Commw. 597, 600-01, 317 A.2d 332, 334.

Because the findings and decision of the administrative agency in this cause are not contrary to the manifest weight of the evidence (see, *e.g., Burke v. Board of Review* (1985), 132 Ill. App. 3d 1094, 1100), the trial court erred when it reversed the determination of the Board that the plaintiff had not established her entitlement to unemployment insurance benefits under the provisions of section 601(A) of the Unemployment Insurance Act. Accordingly, the judgment of the circuit court of McHenry County is reversed.

Reversed.

NASH, P.J., and SCHNAKE, J., concur.