CLARINE EGGLESTON, Plaintiff-Appellant, v. THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—88—2848

Opinion filed June 1, 1990.

Barry A. Schultz, of Schultz & Winick, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Diane Curry Grapsas, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiff, Clarine Eggleston, sought administrative review in the circuit court of Cook County from a decision of the Board of Review

(Board) which denied her claim for unemployment compensation. The circuit court confirmed the Board's determination, and on appeal plaintiff contends that the circuit court erred.

Plaintiff submitted an application for unemployment insurance benefits, but a claims adjudicator determined from plaintiff's application that plaintiff was ineligible for unemployment insurance benefits under section 601(A) of the Unemployment Insurance Act (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 431(A)). Plaintiff was then granted a further administrative hearing where she testified that she was employed as an office manager of the Norrell Health Company from March 1986 until October 27, 1987. Plaintiff's employment required substantial telephone duty. Plaintiff explained that she left her job because she had a personality conflict with her branch manager, Rick Wallace. Plaintiff felt that the conflict created stress which manifested itself as ringing sounds in her ears, severe headaches, faintness and dizziness. Plaintiff submitted a prescription from her physician dated September 21, 1987, stating that she "need[ed] a telephone headset at work because her poor posture necessited [sic] by use of a hand set is causing chronic muscular pain." Plaintiff testified that she informed the branch manager of her medical problems and the need for a headset. Plaintiff stated that her manager promised to purchase the headset. Shortly thereafter plaintiff was hospitalized.

Plaintiff submitted a disability certificate written by Dr. Neal on October 24, 1987. The certificate stated that plaintiff "was totally incapacitated from October 9, 1987, to October 26, 1987, due to nervous anxiety and transient ischemic attack." Dr. Neal instructed plaintiff to return to work on October 26, 1987. Plaintiff returned to work as instructed but then presented her employer with her letter of resignation. Plaintiff's letter of resignation stated:

"In order to generate productivity and quality of service there must be some form of mistrust [sic] and unity between the developers, these things I find totally lacking in my assigned area, being that they are necessary and vital but non-existing, I can no longer function in the capacity in which I am capable, for these reasons effective November 9, 1987, I hereby resign my position as service director for Norrell Health Care, Branch 373, Territory 51."

Plaintiff admitted that she failed to inform her employer that she was leaving because of health-related reasons. She stated that she feared being labeled disabled if she was unable to perform her job duties due to health-related reasons. On November 9, 1987, plaintiff completed an application form for unemployment compensation

wherein she stated that she left her employment due to "[in]compatibility with the branch manager. Under stress created continuous ringing in her ears, severe headaches, and was hospitalized for one week for conditions and went through a number of test[s]." The form required the name and address or telephone number of her doctor. It also asked for the nature of the illness and the date the doctor advised the applicant to quit working. Plaintiff did not provide the requested information. Plaintiff did list "Health reasons" as the basis she gave to her employer for quitting her job. Plaintiff responded "no" to the question "Do you think it was necessary for you to quit?" On January 5, 1988, Dr. Neal wrote a letter to "Whom it may Concern" which stated: "Clarine Eggleston on 10-20-87 suffered a transient ischemic attack presumably secondary to tension and stress on her job. For these reasons I suggested removal from her employment at Norrell Health Care."

Rick Wallace, a district manager employed by Norrell Health Care, testified on behalf of his employer. He stated that plaintiff never gave him a doctor's note, although she did inform him that she needed a telephone headset to minimize the ringing in her ears. Wallace stated that he gave plaintiff the authority to purchase a headset and informed her that she would be reimbursed for the cost. He further stated that plaintiff explained that she was resigning because of a personality conflict.

After considering all of the evidence presented at the administrative hearing, the referee stated in his findings of fact that plaintiff left her employment because of work-related stress which caused health problems. However, plaintiff did not inform her employer that she was leaving due to health problems; instead, she stated that she was leaving due to personality conflicts. The referee concluded that plaintiff did not qualify for unemployment insurance benefits because she voluntarily left work without a showing of good cause attributable to the employer. The referee concluded that since plaintiff left her job for health reasons but did not inform her employer of her reasons for leaving, she was voluntarily unemployed without good cause attributable to her employer and therefore was ineligible for benefits under the Act. The Board affirmed this decision.

OPINION
■ At issue is whether plaintiff was involuntarily unemployed, so as to qualify for unemployment benefits when plaintiff left work for health reasons but failed to inform her employer of her reasons for leaving.

Section 601(A) of the Act provides, as relevant to this case:
  "An individual shall be ineligible for benefits for the week he
  has left work voluntarily without good cause attributable to the
  employing unit ***." (Ill. Rev. Stat. 1981, ch. 48, par. 431(A).)
There are five exceptions to this section, none of which apply here.

To qualify as involuntarily unemployed, plaintiff must (1) offer
competent testimony that adequate health reasons existed to justify
termination at the time of termination; (2) have informed the em-
ployer of the health problem; and (3) be available where reasonable ac-
commodation is made by the employer for work which is not adverse
to the employee's health. (*Burke v. Board of Review, Illinois Depart-
ment of Labor* (1985), 132 Ill. App. 3d 1094, 477 N.E.2d 1351.) These
three factors must be supported by medical evidence concerning the
alleged health problems, and the failure to satisfy any one of the fac-
tors will bar a claim for unemployment compensation. 132 Ill. App. 3d
at 1102.

■ In the present case, plaintiff merely notified her employer
that she was resigning because she was unable to function in an envi-
ronment which lacked trust and unity. Plaintiff did not report any spe-
cific medical conditions as related to the job, nor did she provide her
employer with any documentation from her treating physicians. Plain-
tiff did submit medical documentation at the administrative proceed-
ings, but plaintiff stated that she did not give the documentation to
her employer for fear of being labeled disabled. Dr. Neal's disability
statement advised plaintiff to return to work on October 26, 1987. On
that very day she submitted her letter of resignation. Two months
passed before Dr. Neal wrote a letter advising of his suggestion that
plaintiff discontinue her employment. Plaintiff offered no explanation
for the inconsistencies in the two documents. Based on these circum-
stances plaintiff was unable to support a claim that adequate health
reasons existed to justify her leaving employment at that time. Plain-
tiff did not demonstrate that she informed the employer of her health
problems. Therefore plaintiff cannot qualify as involuntarily unem-
ployed and is ineligible for unemployment insurance benefits.

■ ■ Additionally, plaintiff had the burden of establishing that
her employment was terminated for good cause attributable to her
employer. (Ill. Rev. Stat. 1987, ch. 48, par. 431(A).) The statute does
not define "good cause." Consequently, the Illinois courts have sought
guidance in interpreting "good cause" from other jurisdictions which
have similarly worded unemployment compensation statutes. (See,
*e.g., Popoff v. Department of Labor* (1986), 144 Ill. App. 3d 575, 494
N.E.2d 1266.) In *Taylor v. Unemployment Compensation Board of Re-*

*view* (1977), 474 Pa. 351, 358-59, 378 A.2d 829, 832-33, for example, the Pennsylvania Supreme Court held that " 'good cause' for voluntarily leaving one's employment (*i.e.*, that cause which is necessitous and compelling) results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner." (*Finik v. Department of Employment Security* (1988), 171 Ill. App. 3d 125, 132, 524 N.E.2d 1148.) Plaintiff's refusal to purchase the headset after being informed that she would be reimbursed for the cost did not meet the standard of ordinary reasonableness. Therefore plaintiff failed to establish that her employment was terminated for good cause.

When reviewing an administrative decision, a court cannot reweigh the evidence, but it can determine if the decision is against the manifest weight of the evidence. (*Jackson v. Board of Review of the Department of Labor* (1985), 105 Ill. 2d 501, 475 N.E.2d 879.) We agree with the circuit court that the Board's finding was not contrary to the manifest weight of the evidence. Therefore, we affirm the circuit court's judgment.

Judgment affirmed.

COCCIA, P.J., and MURRAY, J., concur.