RENEE C. FINIK, Plaintiff-Appellee, v. THE DEPARTMENT OF EM-
PLOYMENT SECURITY *et al.*, Defendants-Appellants.

First District (4th Division)   No. 86—0218

Opinion filed May 26, 1988.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Candida Miranda, Assistant Attorney General, of Chicago, of counsel), for appellants.

No brief filed for appellee.

JUSTICE LINN delivered the opinion of the court:

Defendant, Illinois Department of Employment Security, appeals from an order of the circuit court of Cook County which reversed its determination that plaintiff, Renee Finik, was ineligible to receive unemployment benefits because she voluntarily terminated her employment with Lane-Bee Discount without good cause. In this appeal defendant contends that the court erred in finding that the employer's appeal of the claims adjudicator's decision was untimely, and, secondly, that the court's reversal of defendant's ineligibility determination was against the manifest weight of the evidence. Plaintiff has not filed a brief in response; however, we may consider the issues presented for review under the standards set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

BACKGROUND

The record shows that plaintiff was employed by Lane-Bee Discount from September 1983 until September 17, 1984. By agreement she worked on a part-time basis so that she would be able to care for her five-year-old son when he returned from school at mid-day. On September 17, 1984, plaintiff, who was then pregnant with her second child, left work at 2 p.m., as was her pattern. About three hours later, however, she telephoned her immediate supervisor, Telford Lane, and told him that she would not be returning to work. Her stated reason for leaving was that her employer was "prejudiced against pregnant women."

Plaintiff thereafter filed a claim for benefits under the Illinois Unemployment Insurance Act (Ill. Rev. Stat. 1983, ch. 48, par. 300 *et seq.*). She asserted that after she had informed her employer of her pregnancy and the accompanying restrictions on lifting which were imposed by her doctor, her employer told her that she would not get any special privileges because of her condition; that she was instructed to climb ladders and lift boxes which contained four-gallon bottles; that her supervisor embarrassed her in front of customers; and that she was also told that her employer wanted her to work nights. The claims adjudicator found her eligible for benefits based on the employer's request that she perform heavy lifting chores which were prohibited by her pregnancy. The employer disputed this finding, contending that plaintiff quit for reasons not attributable to the employer, and requested that the adjudicator reconsider her determination. The original finding was affirmed, however, and the employer then sought a hearing before the referee.

Pursuant to this request, a hearing took place on December 3, 1984. Plaintiff appeared *pro se* with her husband, and the employer was represented in person by its claims representative, Carlyle Bascom, and via telephone by its manager, Telford Lane. Lane was sworn by the referee and denied plaintiff's assertions that she had been ordered to perform heavy lifting chores after she had informed him that she was pregnant and was restricted from this type of activity. He also stated that she had never been ordered to perform heavy lifting work throughout her employment and that her duties were comprised of cashiering and light stock work. He further stated that he and others assisted her with heavy containers. He denied telling her that he would not give her any special privileges because of her condition, that he had ordered her to climb ladders and lift heavy boxes, or that he threatened to transfer her to the night shift. With regard to a change in her working hours, he suggested that the latter was available if that would facilitate her child-care problems, but she told him that her husband did not want her to work in the evening. Lane also denied that he had embarrassed plaintiff in front of any customers or that he was prejudiced against her because she was pregnant. He stated that on the day she terminated her employment, she was assigned to clean the hair-color section, which was made up of two-ounce bottles. He observed that she had put the bottles in backwards, and, when he questioned her about it, she said she did not know why she had put them up in that manner. She asked him if she were going to be discharged because of it. He said that she was not. He then noted that she had previously asked him to discharge her on previously occasions but that he had refused to do so because he had no reason to take this action.

Plaintiff asserted that Lane was lying on behalf of the employer and asserted that the day she quit she had been on a ladder for at least four hours. She also accused him of reprimanding her in front of the customers. Lane reasserted that plaintiff had never done any heavy lifting in her employment and stated that she had never brought in a statement from her doctor indicating that she was being injured by any lifting duties associated with her work. At that point plaintiff produced an undated letter from her obstetrician which stated that plaintiff was under his care and that he had advised her to avoid strenuous exercise and heavy lifting because the fertility drug she had taken subjected her to an added risk of miscarriage. Lane stated that he had never been furnished with such a letter and repeated that there was no overly strenuous exercise or heavy lifting involved in her job. Plaintiff retorted that she had told Lane that she

was going to get a letter from her doctor, and had also invited him to call her physician, but that he did not.

Plaintiff's husband interjected that he had called Lane a few days before the day plaintiff quit and asked why she was required to do heavy lifting; he also requested him to give her some leeway. Lane denied making any comments on lifting and under questioning by Mr. Bascom stated that plaintiff always called him or other employees to assist her with heavy lifting chores on in getting merchandise up to the front of the store.

The referee concluded that the evidence did not establish that plaintiff had left work voluntarily with good cause attributable to the employing unit, and thus she was disqualified from benefits under section 601(A) (Ill. Rev. Stat. 1983, ch. 48, par. 431(A)) of the Act. In reaching this conclusion, the referee found that there was no showing that plaintiff's work was unsuitable and noted that job dissatisfaction did not constitute good cause for leaving.

Plaintiff appealed this decision to the Board of Review. She contended that Lane's statements at the hearing were fallacious and reasserted her claim that she had been required to do work which was prohibited by her pregnancy. The Board adopted the findings of fact of the referee and concluded that the evidence failed to establish that plaintiff was harassed at work or that she had substantiated her claim of prejudice. The Board concluded that plaintiff created her own unemployment by leaving work, and did so without good cause attributable to the employer.

Plaintiff then filed a *pro se* complaint for administrative review (Ill. Rev. Stat. 1983, ch. 110, par. 3—101 *et seq.*). At the hearing which was held on October 27, 1985, plaintiff appeared *pro se* and defendant was represented by the office of the Attorney General. The court first ascertained the duties attendant to plaintiff's work at Lane-Bee and considered her contentions regarding prejudice because of her condition. After receiving this information and hearing the arguments of the respective parties, the court initially indicated that it would affirm defendant's decision. At that point, however, plaintiff's husband questioned the timeliness of the employer's appeal of the claims adjudicator's determination, noting that the decision was rendered on October 3, 1984, and that defendant's appeal, dated November 13, 1984, was outside of the 30-day appeal period available to it.

Defense counsel pointed out that the matter had not previously been raised through the administrative process and further noted that the record contained a determination by the adjudicator dated October 19, 1984, which would make the appeal timely. After considering

the entire record, the court found an apparent change of date on the motion for reconsideration. The court held that the record was not clear and that some of the facts were contrary to the manifest weight of the evidence. The court then reversed defendant's decision, and, when asked to specify the reasons for its ruling, the court stated there were obvious changes on the date on one of the orders and that it appeared that the employer's appeal was untimely.

Defendant subsequently filed a motion for reconsideration explaining the conflicting dates which appeared in the record. Defense counsel informed the court that the claims adjudicator made her initial determination on October 3, 1984, and served plaintiff with notice on that date. Defendant, however, was not served until October 19, 1984. The defense motion was accompanied by an affidavit from the supervisor of adjudications of the office where the request was processed. The affiant stated that plaintiff was served on October 3, 1984, but in accordance with normal office procedure, the adjudicator's decision was not communicated to the employer until October 19, 1984.

The matter was continued so that a transcript of the proceedings could be prepared and when the hearing reconvened on December 17, 1984, defendant's counsel set forth the pertinent facts and provided a clearer photocopy of the disputed document. The court persisted in its ruling, however, and found that the employer's notice was untimely, and, further, that the plaintiff had good cause for leaving her employment due to her health condition at the time.

In this appeal, defendant contests the propriety of both findings, contending that the employer's appeal of the claims adjudicator's decision was timely and that defendant's determination of ineligibility was not contrary to the manifest weight of the evidence.

OPINION

I

■ The threshold issue to be decided is whether the referee had jurisdiction to consider the employer's appeal of the adjudicator's decision. By statute:

"Unless the claimant or any other party entitled to notice of the claims adjudicator's 'finding' or 'determination,' *** within 30 calendar days after the delivery of the claims adjudicator's notification of such 'finding' or 'determination,' or within 30 calendar days after such notification was mailed to his last known address, files an appeal therefrom, such 'finding' or 'determination' shall be final as to all parties given notice

thereof." (Ill. Rev. Stat. 1983, ch. 48, par. 470.)
The time limitation set forth in this statute has been found analogous to a statute of limitations provision for those parties to which notice was given and is thereby mandatory rather than directory. *Hernandez v. Department of Labor* (1981), 83 Ill. 2d 512, 416 N.E.2d 263.

In the instant case, the claims adjudicator determined on October 3, 1984, that plaintiff had voluntarily left her employment with good cause attributable to the employer and was thus eligible to receive unemployment compensation benefits. Plaintiff was notified of the decision on the same date, and on November 14, 1984, the employer filed an appeal requesting that a hearing be scheduled. The referee reversed the adjudicator's decision and the matter proceeded throughout the administrative review process until it reached the circuit court, where the issue of the timeliness of the employer's appeal was raised for the first time. The circuit court, on the basis of the record before it, decided that the appeal was untimely, citing particularly the changes in the determination and appeal dates made on the notice of reconsideration and appeal submitted by the employer.

Counsel attempted to explain the apparent discrepancy by informing the court that the employer was notified of the claims adjudicator's determination on October 19, 1984, as indicated by the computer printout and the affidavit of the supervisor of the claims adjudicator who handled the case. The affiant further stated that this mailing to the employer was in accordance with this normal office procedure.

■ It has been held that a mailing may be proved by evidence of an office custom together with corroborating circumstances showing that the custom was followed in the particular instance. (*Commonwealth Edison Co. v. Property Tax Appeal Board* (1978), 67 Ill. App. 3d 428, 384 N.E.2d 504.) The affidavit supplementing the motion must be examined to see whether, under these requirements, a mailing has been performed. In order to summarily dispose of a case the affidavit must be viewed as a substitute for testimony taken in open court, subject to the rule that if the affidavit were the only evidence to go before the trier of fact, the court would be compelled to direct a verdict in favor of the movant. *Commonwealth Edison Co. v. Property Tax Appeal Board*, 67 Ill. App. 3d 428, 384 N.E.2d 504.

■ In the instant case the affidavit submitted by the supervising claims adjudicator explained defendant's customary procedure regarding the manner in which notification of the claims adjudicator's decision is sent to the interested parties. The affidavit further stated that, in accordance with that custom, plaintiff was notified by mail of the decision in her favor on October 3, 1984, but that defendant was not

notified until October 19, 1984, as reflected in the computer printout which was contained in the record. Counsel argued that under this scenario the employer had until November 18, 1984, to file its notice of appeal in the case and its filing on November 14, 1984, was timely. Defense counsel also attributed the change of dates reflected in the notice of appeal to be a mistake.

The circuit court did not accept this explanation, however, and based its determination of untimeliness on that change. We believe the manifest weight of the evidence militates against such a finding and conclude on this record that the court erred in finding that the employer's appeal was untimely.

## II

Having so determined, we must further consider whether the court erred in reversing the Board's decision that plaintiff is ineligible to receive unemployment compensation benefits.

The circuit court found that plaintiff has good cause for leaving her employment due to her health condition at the time, a finding which contravened the Board's determination that she had voluntarily left her employment without good cause attributable to her employer and was, therefore, subject to a disqualification of benefits under section 601(A) of the Act.

■■ This section provides in pertinent part that "[a]n individual shall be ineligible for benefits for the week in which he has left work voluntarily without good cause attributable to the employing unit." (Ill. Rev. Stat. 1983, ch. 48, par. 431.) Since this statute does not define "good cause," Illinois courts have looked for guidance in interpreting this phrase to decisions rendered by foreign jurisdictions which have similarly worded unemployment compensation statutes. (See, *e.g., Popoff v. Department of Labor* (1986), 144 Ill. App. 3d 575, 494 N.E.2d 1266; *Burke v. Board of Review* (1985), 132 Ill. App. 3d 1094, 477 N.E.2d 1351.) In *Taylor v. Unemployment Compensation Board of Review* (1977), 474 Pa. 351, 358-59, 378 A.2d 829, 832-33, for example, the Pennsylvania Supreme Court held that " 'good cause' for voluntarily leaving one's employment (*i.e.*, that cause which is necessitous and compelling) results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner."

■■ ■ Once the legal standard of "good cause" is established, the determination of what particular condition meets that standard is ordinarily a factual issue. (*Thompson v. Board of Review* (1983), 120 Ill.

App. 3d 1, 457 N.E.2d 512.) It is the responsibility of the administrative agency to weigh the evidence and determine the credibility of the witnesses (*Nendza v. Board of Review of Department of Labor* (1982), 105 Ill. App. 3d 437, 434 N.E.2d 470), and under the Code of Civil Procedure an agency's findings and conclusions on factual issues are held to be *prima facie* true and correct (Ill. Rev. Stat. 1983, ch. 110, par. 3—110). A reviewing court may not reweigh the evidence; its function is limited to determining whether the administrative agency's decision is against the manifest weight of the evidence. *Jackson v. Board of Review of Department of Labor* (1985), 105 Ill. 2d 501, 475 N.E.2d 879.

In finding plaintiff ineligible for benefits, defendant concluded that, although the evidence established that she was pregnant, it failed to show that she was harassed at work or that her employer was prejudiced against her because of her condition. In addition, defendant found that although plaintiff was restricted from doing any lifting, the employer had help available to assist her in that type of activity. Defendant then concluded that the work was not unsuitable and that plaintiff created her own unemployment without good cause attributable to her employer.

■ This court has recognized that good cause for leaving may result from a substantial, unilateral change in the employment which renders the job unsuitable, and that it may also consist of a reasonable subjective fear concerning health, even without the advice of a physician. (See *Zbiegien v. Department of Labor* (1987), 156 Ill. App. 3d 395, 510 N.E.2d 422 (and cases cited therein).) However, in order to demonstrate that health is a compelling reason to terminate employment, a plaintiff must: " '(1) offer competent testimony that adequate health reasons existed to justify termination at the time of termination; (2) have informed the employer of the health problem[;] and (3) be available, where reasonable accommodation [*sic*] is made by the employer, for work which is not inimical to his health.' " *Burke v. Board of Review* (1985), 132 Ill. App. 3d 1094, 1101-02, 477 N.E.2d 1351, 1357, quoting *Dornblum v. Commonwealth, Unemployment Compensation Board of Review* (1983), 77 Pa. Commw. 547, 549, 466 A.2d 747, 749.

■ In the case at bar, plaintiff asserted that she could not perform work involving heavy lifting due to her pregnancy and produced a letter from her obstetrician stating that she was to avoid strenuous exercise and heavy lifting. The letter was undated, and although plaintiff stated that she had advised her employer of this restriction and invited him to call her physician, she admitted that she had never

given this letter to her employer. Her assertions as to the physical labor she was required to perform in her work, and the harassment which occurred because of her condition, were vigorously disputed by her employer. By its decision defendant obviously decided the credibility issue presented by the testimony in favor of defendant. The circuit court, however, reversed that decision, finding that plaintiff's health condition and the work she was required to perform justified her leaving.

We disagree with the circuit court's ruling. After reviewing the record in light of the principles set forth above, we find that plaintiff failed to prove that her health concern provided good cause attributable to the employer to justify her leaving her employment and entitled her to benefits under the Act.[1] See *Zbiegien v. Department of Labor* (1987), 156 Ill. App. 3d 395, 510 N.E.2d 422.

█ The mere existence of conflicting testimony is not a sufficient basis to reverse an agency's decision as being against the manifest weight of the evidence (*Ceja v. State Police Merit Board* (1973), 12 Ill. App. 3d 52, 298 N.E.2d 378), and where there is evidence to support the agency's determination, its decision should be affirmed (*Wegmann v. Department of Registration & Education* (1978), 61 Ill. App. 3d 352, 377 N.E.2d 1297). In our judgment, defendant's findings and conclusion were not contrary to the manifest weight of the evidence. (*Jackson v. Board of Review of Department of Labor* (1985), 105 Ill. 2d 501, 475 N.E.2d 879.) Consequently, we will not disturb its determination that plaintiff left her employment without justifiable cause and that she was thus subject to a disqualification of benefits under the Act.

Judgment reversed.

McMORROW and JOHNSON, JJ., concur.

---

[1]Parenthetically, we note that an exception to the disqualification of benefits set forth in section 601(A) is provided for in section 601(B), where an individual leaves work voluntarily because he is "deemed physically unable to perform his work by a licensed and practicing physician *** and he has notified his employing unit of the reasons for his absence." (Ill. Rev. Stat. 1983, ch. 48, par. 431(B)(1).) Since plaintiff never gave her doctor's letter to her employer, this section is inapplicable.