**Mujahid SULUKI, Appellant,**

v.

**EMPLOYMENT APPEAL BOARD and DCS, Appellees.**

No. 92–832.

Supreme Court of Iowa.

July 21, 1993.

Michael J. Tulis of Legal Services Corp. of Iowa, Sioux City, for appellant.

William C. Whitten and Joe E. Smith, Des Moines, for appellee Employment Appeal Bd.

Considered by McGIVERIN, C.J., and SCHULTZ, LAVORATO, NEUMAN, and ANDREASEN, JJ.

LAVORATO, Justice.

In this judicial review proceeding, the main issue is whether an employee voluntarily quit his employment without good cause attributable to his employer. The district court upheld the agency's decision that concluded the employee did so quit. One basis for the decision was the employee's alleged failure to give his employer notice of his intention to quit because of work-related health problems. Because we hold that such notice was required as a condition for entitlement to unemployment compensation benefits, we affirm.

On June 13, 1991, DCS Sanitation Management, Inc., hired Mujahid Suluki to do cleanup work at the Iowa Beef Processors' plant in Dakota City, Nebraska. Before starting work, Suluki attended an employer-sponsored orientation program during which he saw two training films. The films described the kind of work Suluki would be doing and the chemicals he would be using.

In addition, DCS representatives reviewed with Suluki the type of safety equipment and protective clothing that he would need for the job. They also reviewed with him the types of chemicals he would be using. Suluki signed a safety orientation sheet acknowledging that DCS had covered and explained these matters to him. He also signed and acknowledged other informational sheets about safety procedures and the type of training he had received.

Suluki began working on June 16 and lasted four days. He did not return to work after June 19. Suluki left without telling DCS that he had decided to quit and why.

Later Suluki filed for unemployment compensation benefits. On his claim form, Suluki said he quit because he had an allergic reaction to the chemicals DCS was using. He acknowledged that he sought no medical attention for the reaction and that he was not advised by a doctor to quit.

A job service representative found that Suluki left his employment voluntarily because Suluki thought the work was detrimental to his health. The representative concluded that Suluki's separation from employment was not attributable to his employer, DCS, and denied him benefits.

Suluki took an intraagency appeal from this decision. As grounds for his appeal, Suluki reiterated what he had said on his initial claim form. In addition he claimed that the chemicals that were being used in the area where he was working were causing him to break out with a rash all over his upper body and arms. He also claimed that the chemicals made him sneeze and wheeze as if he had hay fever, making it difficult for him to finish a shift. He explained that he thought the rash would go away if he quit and was no longer around the chemicals, and that, in fact, the rash did disappear a few days after he quit.

At a hearing on his appeal, Suluki testified substantially as to what he had written on his initial claim form and on his notice of appeal form. He explained that his work required him to move about the floor in the trim room picking up meat trimmings. He further explained that while he was doing that, other employees working above and around him used jet hoses to spray chemical solutions on the machines and the chemicals would come into direct contact with him. As a result of this contact and be-

cause he was not wearing protective gear, Suluki believed he developed the sneezing, wheezing, and rash he wrote about earlier.

During this hearing, Suluki contended that he left his employment with good cause attributable to DCS based on unsafe, unlawful, intolerable, and detrimental working conditions. DCS contended that Suluki left without good cause attributable to it when he abandoned his job and failed to give DCS any notice that he would not be returning to work.

Following the hearing, an administrative law judge (ALJ) denied Suluki unemployment benefits. The ALJ found that Suluki voluntarily left his employment without good cause attributable to his employer because of dissatisfaction with his work environment. As to the reason for Suluki's quitting, the ALJ found the testimony of DCS' representative and DCS' evidence to be more credible than Suluki's testimony. The ALJ further found that Suluki never told DCS about his medical problems nor did he seek any medical treatment. In further support of his decision, the ALJ cited a case from another jurisdiction. That case placed an affirmative duty on the employee to inform the employer as to the employee's contemplation of quitting in order to give the employer an opportunity to correct the need to quit.

Suluki then appealed this decision to the Iowa employment appeal board. The board affirmed the ALJ's decision, adopting the ALJ's findings of fact, reasoning, and conclusions of law. Following the board's decision, Suluki sought judicial review in district court. That court affirmed the final agency decision. This appeal followed.

■ Our review of job service cases is governed by the Iowa Administrative Procedure Act, chapter 17A of the Iowa Code. *Norland v. Iowa Dep't of Job Serv.*, 412 N.W.2d 904, 908 (Iowa 1987). In reviewing a district court decision on the validity of agency action, we ask only whether the district court correctly applied the law. *Id.* The district court is itself acting in an appellate capacity to correct errors of law on the part of the agency. *Id.* In our view of such action by the district court, we

apply the standards of Iowa Code section 17A.19(8) to the agency action to determine whether our conclusions are the same as those of the district court. If they are we affirm; otherwise we reverse. *Id.*

■ Two such standards are implicated here: whether the agency action is in violation of statutory provisions and whether the agency action is supported by substantial evidence. *See* Iowa Code § 17A.19(8)(b), (f) (1991). As to the first standard—violation of statutory provisions—we accord an agency only limited deference on matters of law, including statutory interpretation. The final decision is ours. *Norland,* 412 N.W.2d at 908.

■ As to the second standard—substantial evidence—an agency's findings of fact are binding on us if supported by substantial evidence in the record, when that record is viewed as a whole. *Id.* at 913; Iowa Code § 17A.19(8)(f). Evidence is substantial if a reasonable mind would accept it as adequate to reach the same findings. *Norland,* 412 N.W.2d at 913.

The governing statute in this case is Iowa Code section 96.5. It pertinently provides:

An individual shall be disqualified for benefits:

1. *Voluntary quitting.* If the individual has left work voluntarily without good cause attributable to the individual's employer....

■ In unemployment compensation cases, the burden is on the employee to show entitlement to unemployment compensation. The employer, however, has the burden of proving that a claimant quit without good cause attributable to the employer. *See* Iowa Code § 96.6; *Taylor v. Iowa Dep't of Job Serv.,* 362 N.W.2d 534, 541 (Iowa 1985).

■ The resolution of this case boils down to whether Suluki had an affirmative duty to notify his employer, DCS, of his alleged work-related health problems before he quit. If he had such a duty and did not give such notice, then he voluntarily quit without good cause attributable to the

employer. This question involves an interpretation of section 96.5 and therefore is one of law for us to decide.

Suluki thinks he had no such duty. He relies heavily on *Rooney v. Employment Appeal Bd.*, 448 N.W.2d 313 (Iowa 1989), to support his position. His reliance is misplaced. The issue of notice was not raised nor decided in *Rooney.* In addition, the employer in *Rooney* was well advised of the employee's problem before the employee quit. The issue of notice here is one of first impression.

We think it is logical, reasonable, fair, and practical to require—as a condition of entitlement to unemployment benefits—an employee to give an employer notice of work-related health problems before quitting. Such a requirement would enable an employer to correct the working conditions causing the problem or provide the employee with different job duties. Then if the employer does not correct the problem or otherwise reasonably accommodate the employee, the employee would have good cause to quit. Such a requirement could result in eliminating the need for the employee to seek unemployment compensation benefits in the first place. Several courts with statutes similar to section 96.5(1) follow this rule. *See, e.g., O'Neal's Bus Serv., Inc. v. Employment Sec. Comm'n,* 269 A.2d 247, 249 (Del.Super.1970) (employee does not have good cause to quit and entitlement to unemployment compensation benefits merely because there is undesirable or unsafe situation connected with employment, and employee must do something akin to exhausting administrative remedies by, for example, seeking to have situation corrected by proper notice to employer); *Finik v. Illinois Dep't of Employment Sec.,* 171 Ill.App.3d 125, 132, 121 Ill.Dec. 100, 106, 524 N.E.2d 1148, 1154 (1988) (in order to demonstrate that health is compelling reason and good cause to terminate employment and to qualify employee for unemployment compensation benefits, employee must offer competent evidence that adequate health reasons existed to justify termination at time of termination, must have informed employer of health problem and must be available when reasonable accommodation is made by employer for work that is not inimical to employee's health); *Ray v. Broyhill Furniture Indus.,* 81 N.C.App. 586, 590–91, 344 S.E.2d 798, 801–02 (1986) (notice required but if employer does not respond, employee leaves work with good cause attributable to the employer); *Irvine v. State Unemployment Compensation Bd.,* 19 Ohio St.3d 15, 17, 482 N.E.2d 587, 590 (1985) (notice required to justify quitting for just cause); *Allen v. Commonwealth Unemployment Compensation Bd.,* 93 Pa. Commw. 390, 391–95, 501 A.2d 1169, 1170–71 (1985) (in order to recover unemployment compensation for health-related termination of employment, former employee must (1) offer competent testimony showing adequate health reasons to justify termination, (2) have informed employer of health problem, and (3) have remained available for work not inimical to employee's health).

We hold that, before quitting, an employee must give an employer notice of work-related health problems and that the employee intends to quit unless those problems are corrected or the employee is otherwise reasonably accommodated. Absent such notice, the employee has left work voluntarily without good cause attributable to the employer and is not entitled to unemployment compensation benefits.

The record is uncontroverted that Suluki gave his employer, DCS, no notice of his alleged work-related health problems before he quit. There was, therefore, substantial evidence to support the agency's finding that he voluntarily quit without good cause attributable to his employer, DCS. For this reason we affirm the district court's decision.

**AFFIRMED.**