**Henry Paul COBB, Appellant,**

v.

**EMPLOYMENT APPEAL BOARD and Kor–Bert, Inc., Appellees.**

No. 92–1417.

Supreme Court of Iowa.

Oct. 20, 1993.

Rehearing Denied Nov. 23, 1993.

Mark S. Soldat, Algona, for appellant.

Thomas F. Pronk, Garner, for appellee Kor–Bert, Inc.

William C. Whitten, Des Moines, for appellee Employment Appeal Bd.

Considered by HARRIS, P.J., and CARTER, LAVORATO, NEUMAN, and ANDREASEN, JJ.

HARRIS, Justice.

This is a dispute over the denial of unemployment benefits after a voluntary quit by the employee. The district court, sitting in review of agency action, affirmed the denial and so do we.

While working as a carpenter for a prior employer, the claimant, Henry Cobb, developed overuse syndrome in his upper extremities and shoulders. As a result a doctor took him off work at that company. Cobb was treated at an occupational medicine clinic that recommended a change in Cobb's line of employment and outlined certain restrictions in any future work. Although the former employer offered him a job within the restrictions, Cobb instead undertook employment at Kor–Bert, Inc., the respondent in this proceeding.

In applying for employment with Kor–Bert, Cobb presented a list of his restrictions and was assured Kor–Bert would comply with them. Notwithstanding these assurances, many of the restrictions were in fact violated or exceeded, but Cobb did not complain. Cobb did not inform Kor–Bert of the problem until after he stopped working there.

Cobb last performed work for Kor–Bert on or about November 8, 1991. Cobb failed to report to work on the following day and was called by a Kor–Bert representative. Cobb said he would be late because he was having problems with one of his children. He also said he intended to take a week off because his "arm hurt." A few days later Cobb's wife advised Kor–Bert that her husband was quitting. At no time during these conversations did Cobb notify Kor–Bert that his quit was due to intolerable or detrimental working conditions, work-related health problems, or change in contract for hire.

Cobb then applied for unemployment benefits. The job service representative found that Cobb was disqualified for benefits because his quit was due to injury and he did not comply with the notice requirements of Iowa Code section 96.5(1)(d) (1991). Cobb then requested a hearing before an administrative law judge.

That judge determined Cobb failed in his duty to inform his "employer of a contemplation of quitting in order to give the employer an opportunity to correct the need to quit." The administrative law judge concluded that Cobb voluntarily quit without good cause attributable to his employer. Cobb then appealed the matter to the employment appeal board. The board affirmed the conclusion of the administrative law judge. The district court affirmed on judicial review and the matter is before us on appeal from that decision.

■ I. Our review of job service cases is governed by the administrative procedures Act, chapter 17A of the Iowa Code. *Suluki v. Employment Appeal Bd.*, 503 N.W.2d 402, 404 (Iowa 1993). In reviewing a district court decision on the validity of agency action, we ask only whether the district court correctly applied the law. *Id.* The district

court is itself acting in an appellate capacity to correct errors of law on the part of the agency. *Id.* On appeal to us, we apply the standards of Iowa Code section 17A.19(8) to the agency action to determine whether our conclusions are the same as those of the district court. *Id.*

■ Two such standards are implicated here: whether the agency action is in violation of statutory provisions; and whether the agency action is supported by substantial evidence. *See* Iowa Code § 17A.19(8)(b), (f) (1991). As to the first standard—violation of statutory provisions—we accord an agency only limited deference on matters of law, including statutory interpretation. The final decision is ours. *Suluki*, 503 N.W.2d at 404. As to the second standard—substantial evidence—an agency's findings of fact are binding on us if supported by substantial evidence in the record, when the record is viewed as a whole. *Id.;* Iowa Code § 17A.19(8)(f). Evidence is substantial if a reasonable mind would accept it as adequate to reach the same findings. *Suluki*, 503 N.W.2d at 404.

■ II. Most unemployment compensation disputes begin with the general rule that an individual who leaves work voluntarily without good cause attributable to the employer is disqualified for unemployment benefits. Iowa Code § 96.5 (1993). Our task, most often, is to apply the facts to one of the definitions of "good cause" found in Iowa Code sections 96.5(1)(a)–(i), or in Iowa administrative code sections 345–4.26(1)–(28). Our task in the present case is different. The parties here do not question the applicability of any of the code definitions. The fighting issue here is whether, as a prerequisite to benefits, an employee has a duty to inform his or her employer of the motivation for quitting, prior to doing so.

The administrative law judge, the employment appeal board and the district court all found such a duty to exist. They relied on *Larson v. Department of Economic Security*, 281 N.W.2d 667 (Minn.1979). Their reliance was well founded. In *Suluki*, an opinion filed after this case was appealed to us, we

agreed there is a duty to give notice. We said:

> We think it is logical, reasonable, fair, and practical to require—as a condition of entitlement to unemployment benefits—an employee to give an employer notice of work-related health problems before quitting. Such a requirement would enable an employer to correct the working conditions causing the problem or provide the employee with different job duties.

503 N.W.2d at 405.

We have no inclination to retreat from our *Suluki* holding, and see no reason not to apply it here. *Suluki* dealt with Iowa Administrative Code 345–4.26(6) (quitting based on work-related health problems). At issue in the present case are Iowa Administrative Code sections 345–4.26(1) (change in contract for hire) and (4) (where claimant left due to intolerable or detrimental working conditions).

We think the rationale that prompted our *Suluki* holding applies as well here. The evidence indicates Cobb's silence may well have been the sole cause of his continued assignment to the tasks of which he later complained.

■ III. Cobb argues in the alternative that, if he had a duty to notify, it was satisfied for the following reasons:

1. Kor–Bert was aware of Cobb's working restrictions and preexisting health problems but still allowed him to do work which exceeded the restrictions.

2. That by virtue of Cobb telling Kor–Bert representatives at the time he quit that his "arm hurt," they were put on notice.

3. Because Kor–Bert reprimanded Cobb for working too many hours, they were aware that his job was exceeding his restrictions.

By virtue of these facts, Cobb thinks Kor–Bert had actual notice of his problems and the notice requirement was thereby satisfied.

We think not. The *Suluki* notice requirement is not waived by reason of preliminary understandings about work restrictions reached at the time employment is undertaken. The persons assigning the myriad of tasks to a work force should not be expected to check employment applications, or to bear in mind the conversations that took place during a job interview. Surely it is more fair to require the employee to remind the employer at the time a task is assigned that some agreed restriction would thereby be violated. Cobb's failure to advise his employer of the problem before quitting distinguishes this case from *Ellis v. Iowa Department of Job Service,* 285 N.W.2d 153 (Iowa 1979) (employee, suffering from allergy, quit after complaining because of continued presence of Christmas tree at place of employment, benefits allowed).

Notification at the time of the quit comes too late to allow the employer to remedy the problem. Notice then is after the fact, and serves no more good than it would after unemployment benefits are sought. We also reject Cobb's suggestion that a reprimand he received for working too many hours amounted to actual knowledge. Knowledge of Cobb's job performance would not amount to knowledge of some special understanding about working restrictions.

■ IV. Cobb asserts, and neither Kor–Bert nor the Employment Appeal Board contests, that the district court improperly assessed court costs against Cobb. Under Iowa Code section 96.15(2), "an individual claiming benefits shall not be charged fees of any kind in any proceeding under this chapter by the division of job service or its representatives or by a court or an officer of the court." "Fees" include court costs. *Geiken v. Lutheran Home for the Aged,* 468 N.W.2d 223, 227 (Iowa 1991).

The district court order is modified by removing the requirement that Cobb pay court costs. We likewise do not assess court costs on appeal to Cobb.

**MODIFIED AND AFFIRMED.**

All Justices concur except ANDREASEN, J., who concurs specially.

ANDREASEN, Justice (concurring specially).

I believe the employer was legally aware of Cobb's working restrictions, even though his

supervisor was not. However, I concur in the result because prior to quitting, Cobb repeatedly accepted additional hours without complaint. The employer, under these circumstances, could reasonably believe that Cobb voluntarily accepted a modification of the work agreement.