HY–VEE, INC., Appellee,

v.

EMPLOYMENT APPEAL BOARD and
Diyonda L. Avant, Appellants.

No. 04–0762.

Supreme Court of Iowa.

Nov. 18, 2005.

Rehearing Denied March 1, 2006.

---

Robert C. Oberbillig, Des Moines, for appellant Diyonda L. Avant.

Thomas J. Miller, Attorney General, and Richard R. Ramsey and Anita M. Garrison, Assistant Attorneys General, for appellant Employment Appeal Board.

Brian L. Stowe of Finley, Alt, Smith, Scharnberg, Craig, Hilmes & Gaffney, P.C., Des Moines, for appellee.

LARSON, Justice.

The primary issue presented in this unemployment-compensation appeal is whether an employee who quits, citing health problems attributed to an "intolerable working environment" or "detrimental working conditions" must, as a condition to receiving benefits, inform her employer of her intent to quit if the conditions are not improved. The district court and the court of appeals answered in the affirmative, but we disagree.

## I. *Facts and Prior Proceedings.*

Diyonda L. Avant was employed at Hy-Vee, Inc. from October 1998 to January 2003, when she resigned. Avant's employment with Hy-Vee was marked by frequent stress, based in part on the employer's failure to give her pay raises (which the employer claims was based on her poor evaluations). She also complains of hostile working conditions, based largely on her race (she is African-American). Avant filed a complaint with the Iowa Civil Rights Commission, but the complaint was "administratively closed," then reopened in 2002. The civil rights proceedings are not involved in this appeal, although some of the race-related stress claimed by her in her civil rights complaint was also claimed by her to be part of the detrimental or hostile work environment.

On January 10, 2003, Avant resigned, stating in a letter to Hy-Vee that she resigned because of "deteriorating mental health, which directly stems from the hostile work environment [she] was exposed to at the Hy-Vee, Inc. corporate office." Following her resignation, Avant applied for unemployment benefits. Iowa Workforce Development determined that Avant was entitled to benefits, despite her voluntary quit, because she had justifiable cause attributed to the employer. Hy-Vee appealed this decision, and an administrative law judge (ALJ) ruled that Avant was not entitled to benefits because she resigned voluntarily without good cause attributable to the employer. Specifically, the ALJ noted that Avant had failed to give notice of her intent to quit if working conditions were not corrected. Avant did not participate in the hearing before the ALJ. However, Hy-Vee introduced evidence, including Avant's resignation letter, quoted above, that complained about detrimental working conditions. This evidence also included a report by Behavioral Health Resources, an agency designated by Hy-Vee to assess time-off requests. That report stated that "due to emotional stress in her ... she needs an extension in her leave."

Avant appealed to the Employment Appeal Board (board), which reversed the decision of the ALJ and held that Avant was entitled to benefits. The board found that Avant had given sufficient notice to her employer of the hostile environment and that her decline in health was a result of that environment. The board concluded that Avant resigned with good cause at-

tributable to her employer due to "intolerable or detrimental working conditions." *See* Iowa Admin. Code r. 871–24.26(4). The board did not address the issue of whether a notice of intent to quit was required.

On Hy–Vee's petition for judicial review, the district court reversed the board's holding, concluding that the board's decision was not supported by substantial evidence because Avant failed to inform Hy–Vee of her intent to quit if the working conditions were not improved. On Avant's appeal, the court of appeals affirmed the district court, holding that the board's decision was not based on substantial evidence because it had relied on the bare allegations of Avant's letter, rather than sworn testimony.

## II. *Issues.*

Two issues are presented: (1) whether substantial evidence supported the agency's decision that Avant quit for good cause attributed to her employer; and (2) whether Avant was required, prior to quitting, to inform her employer that she would quit if the conditions were not improved, as held by the district court.

■ A. *Sufficiency of the evidence.* Avant's appeal was complicated by the fact she did not participate in the hearing on Hy–Vee's appeal to the ALJ. However, the record before the board included the statement in her letter of resignation that she was suffering from deteriorating mental health as a result of her "hostile work environment," and the report by Behavioral Health Resources that noted her emotional distress. It also considered sworn statements provided by Hy–Vee employees that Avant had complained to Hy–Vee regarding unfair treatment, which she believed was because of her race. The board thus concluded that Hy–Vee was "well aware of the claimant's mental condition,

which was documented as being a direct result of the work environment."

■ Despite the unorthodox method in which the record was presented, we believe substantial evidence supports the board's finding of intolerable or detrimental working conditions. The fact that the evidence was produced by Hy–Vee, and not by the claimant, does not diminish the probative value of it. If an agency's findings of fact are supported by substantial evidence, those findings are binding on judicial review. *PanDa Eng'g v. Eng'g & Land Surveying Bd.*, 621 N.W.2d 196, 198 (Iowa 2001).

Our Administrative Procedure Act defines substantial evidence as

the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance.

Iowa Code § 17A.19(10)(*f*)(1).

■ In assessing substantial evidence,

[w]e consider all the evidence together, including the body of evidence opposed to the agency's view.

. . . [This rule] merely means that *support for the agency finding can be gathered from any part of the evidence.* Because review is not de novo, the court must not reassess the weight to be accorded various items of evidence. Weight of evidence remains within the agency's exclusive domain. Under the circumstances great care must be taken by the reviewing court to avoid moving from the prescribed limited review into one that is de novo.

*Burns v. Bd. of Nursing*, 495 N.W.2d 698, 699 (Iowa 1993) (emphasis added) (citation

omitted); *accord Titan Tire Corp. v. Employment Appeal Bd.*, 641 N.W.2d 752, 755 (Iowa 2002).

> Under Iowa Code section 17A.14(1),
>
> [a] finding shall be based upon the kind of evidence on which reasonably prudent persons are accustomed to rely for the conduct of their serious affairs, and may be based upon such evidence even if it would be inadmissible in a jury trial.

*See Clark v. Iowa Dep't of Revenue & Fin.*, 644 N.W.2d 310, 320 (Iowa 2002) (holding that even hearsay evidence is admissible and may provide substantial evidence); *Hamer v. Iowa Civil Rights Comm'n*, 472 N.W.2d 259, 262 (Iowa 1991) (holding administrative agency not bound by technical rules of evidence). We believe the evidence submitted by Hy–Vee was the kind of evidence on which reasonably prudent persons are accustomed to rely, and the basis for Avant's claim was adequately supported in the record.

■ B. *The "intent to quit" issue.* An employee who quits her employment without good cause attributable to her employer is disqualified from receiving unemployment benefits. Iowa Code § 96.5(1) (2003). Iowa Code section 96.6(1) provides that "[c]laims for benefits shall be made in accordance with such regulations as the department may provide." In accordance with that statute, regulations have been adopted governing whether a voluntary quit is with good cause attributable to the employer. *See* Iowa Admin. Code r. 871–24.26. The relevant provisions state:

> The following are reasons for a claimant leaving employment with good cause attributable to the employer:
>
> . . . .
>
> 24.26(2) The claimant left due to unsafe working conditions.
>
> 24.26(3) The claimant left due to unlawful working conditions.
>
> 24.26(4) The claimant left due to intolerable or detrimental working conditions.
>
> 24.26(5) The claimant was laid off by the employer for being pregnant; however, availability must still be determined.
>
> 24.26(6) Separation because of illness, injury, or pregnancy.
>
> . . . .
>
> b. *Employment related separation.* The claimant was compelled to leave employment because of an illness, injury, or allergy condition that was attributable to the employment. Factors and circumstances directly connected with the employment which caused or aggravated the illness, injury, allergy, or disease to the employee which made it impossible for the employee to continue in employment because of serious danger to the employee's health may be held to be an involuntary termination of employment and constitute good cause attributable to the employer. The claimant will be eligible for benefits if compelled to leave employment as a result of an injury suffered on the job.
>
> In order to be eligible under this paragraph *"b"* an individual must present competent evidence showing adequate health reasons to justify termination; *before quitting have informed the employer of the work-related health problem and inform the employer that the individual intends to quit unless the problem is corrected or the individual is reasonably accommodated.* Reasonable accommodation includes other comparable work which is not injurious to the claimant's health and for which the claimant must remain available.

(Emphasis added.)

Based on these regulations, Avant argues that she was not required to give notice of her intent to quit because she

quit as a result of intolerable working conditions, not health problems. Avant distinguishes *Suluki v. Employment Appeal Board*, 503 N.W.2d 402, 404 (Iowa 1993), and *Cobb v. Employment Appeal Board*, 506 N.W.2d 445, 446–47 (Iowa 1993), on the ground those cases involved work-related health problems, not detrimental or intolerable working conditions. In *Suluki* we stated:

> We think it is logical, reasonable, fair and practical to require—as a condition of entitlement to unemployment benefits—an employee to give an employer notice of work-related health problems before quitting. . . .
>
> We hold that, before quitting, an employee must give an employer notice of work-related health problems and that the employee *intends to quit* unless those problems are corrected or the employee is otherwise reasonably accommodated. Absent such notice, the employee has left work voluntarily without good cause attributable to the employer and is not entitled to unemployment compensation benefits.

503 N.W.2d at 405 (emphasis added). We reaffirmed this holding in *Cobb*, 506 N.W.2d at 448, which, like *Suluki*, involved a work-related *health* quit. The notice of the employee's intent to quit required by *Suluki* and *Cobb* has now been incorporated in Iowa Administrative Code rule 871–21.26(6)(*b*), as quoted above.[1]

Avant argues that she did not quit for health reasons. Her quit, rather, falls under Iowa Administrative Code rule 871–24.26(4)—"the claimant left due to intolerable or detrimental working conditions"— so this requirement of a notice of intent to quit does not apply. The Iowa Administrative Code is clear that the two requirements outlined above relate specifically to Iowa Administrative Code rule 871–24.26(6)(*b*) and do not refer to Iowa Administrative Code rule 871–24.26(4).

The Iowa Administrative Code was amended in 1995 to add an intent-to-quit requirement. *See* 18 Iowa Admin. Bull. 57–58 (August 9, 1995). Avant notes that Iowa Administrative Code rule 871–24.26(4) (intolerable or detrimental working conditions) was not amended at that time and argues that it was the plain intent of the agency to add this requirement of giving notice of intent to quit only when an employee quits for reasons other than intolerable or detrimental conditions, namely, an "illness, injury, or allergy condition."

Based on the plain language of the Iowa Administrative Code, we agree; a notice of intent to quit is not required under rule 871–24.26(4). A proposal to add this notice requirement to rule 871–24.26(4) was considered by the agency in response to a 1999 Executive Order to review its rules, but it elected not to do so. *See* 26 Iowa Admin. Bull. 234 (August 6, 2003).

We conclude that a notice of intent to quit is not required when the employee quits due to intolerable or detrimental working conditions. The court of appeals reached a contrary conclusion in *Swanson*

---

1. This section basically provides that, when a claimant is compelled to leave employment because of illness, injury, or allergy condition attributable to employment (i.e., factors and circumstances directly connected with employment aggravated these ailments), the claimant will be eligible for benefits if they satisfy several conditions, two of which are that:

"Before quitting [the claimant] have informed the employer of the work-related health problem and inform the employer that the individual intends to quit unless the problem is corrected or the individual is reasonably accommodated."

*v. Employment Appeal Board,* 554 N.W.2d 294, 297 (Iowa Ct.App.1996), holding that an employee who quit because of unsafe working conditions was required to notify her employer of her intent to quit, relying on *Suluki.* However, at the time of the employee's quit in *Swanson,* the agency regulations discussed above had not been enacted. *Swanson,* therefore, is no longer controlling.

We vacate the court of appeals decision, reverse the district court judgment, and remand to the board for further proceedings.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED; CASE REMANDED.**