# IN THE SUPREME COURT OF IOWA

No. 21–1948

Submitted October 13, 2022—Filed March 31, 2023

**KYLE A. DORNATH,**

    Appellant,

vs.

**EMPLOYMENT APPEAL BOARD,**

    Appellee,

**WINGER CONTRACTING COMPANY,**

    Intervenor-Appellee.

---

Appeal from the Iowa District Court for Polk County, Jeanie Vaudt, Judge.

An apprentice electrician appeals the denial of his claim for unemployment benefits while he attended training. **AFFIRMED.**

McDermott, J., delivered the opinion of the court in which all participating justices joined. Christensen, C.J., took no part in the consideration or decision of the case.

Jason R. McClitis of Blake & Uhlig, P.A., Kansas City, Kansas, for appellant.

Rick Autry, Employment Appeal Board, Des Moines, for appellee Employment Appeal Board.

Gayla R. Harrison of Harrison, Moreland, Webber & Simplot, P.C., Ottumwa, for appellee Winger Contracting Company.

**McDERMOTT, Justice.**

Requirements for ongoing training to sharpen skills or stay current with developments are, for many, faits accomplis in fields that require accreditation. In this case, we're presented with the question whether the law entitles a worker to unemployment insurance benefits when he is required to attend a weeklong training without compensation from his employer.

Kyle Dornath is an apprentice electrician. As part of his apprenticeship program, he is required to attend occasional classroom training sessions that take place during the work week. Dornath's employer, Winger Electric, requires him to be a part of the apprenticeship program and excuses him from his usual duties to attend the trainings.

In May 2020, Dornath attended a weeklong training as part of his apprenticeship curriculum. Winger Electric didn't pay him for the week he was in training. Under Iowa law, full-time employees are generally eligible for state unemployment benefits when they do not work but are *able* to work, *available* for work, and *actively seeking* work. Iowa Code § 96.4(3) (2021). Dornath, believing he met the law's criteria, filed a claim for unemployment benefits.

The department of workforce development denied his claim. Dornath appealed to the employment appeal board, which affirmed the department's denial. Dornath then sought judicial review with the district court, which likewise affirmed the denial. In this appeal, Dornath asks us to reverse these decisions and grant his claim for unemployment benefits.

We review challenges to a state agency's unemployment benefits decision under the Iowa Administrative Procedure Act, Iowa Code chapter 17A. *Titan Tire Corp. v. Emp. Appeal Bd.*, 641 N.W.2d 752, 754 (Iowa 2002). We will grant appropriate relief if we determine that "substantial rights of the person seeking judicial relief have been prejudiced" by the agency action. Iowa Code § 17A.19(10). We defer to the agency's views on those "particular matters that have been vested by a provision of law in the discretion of the agency." *Id.* § 17A.19(11)(*c*). In our review of the district court's decision, we "apply the standards set forth in section 17A.19(10) and determine whether our application of those standards produce the same result as reached by the district court." *Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 589 (Iowa 2004).

Dornath focuses on three provisions in that statute, urging that the Board's decision (1) is based on "an erroneous interpretation of a provision of law" not within the agency's discretion; (2) "is not supported by substantial evidence in the record" when viewed in its entirety; or (3) is "[o]therwise unreasonable, arbitrary, capricious, or an abuse of discretion." Iowa Code § 17A.19(10)(*c*), (*f*), (*n*).

**I. Availability for Work Under Section 96.4(3).**

To establish a right to unemployment benefits, Dornath must show that he was available for work under Iowa Code section 96.4(3) or, if he can't, that he was partially or temporarily unemployed under section 96.1A(37), paragraph (*b*)(1) or paragraph (*c*). Failing to establish any of these alternative grounds renders Dornath ineligible for unemployment benefits.

Our analysis of whether Dornath is eligible for unemployment benefits begins with Iowa Code section 96.4. It spells out the basic eligibility requirements as follows: "An unemployed individual shall be eligible to receive benefits with respect to any week only if the department finds that . . . [t]he individual is able to work, is available for work, and is earnestly and actively seeking work." *Id.* § 96.4(3). Neither Dornath's ability to work nor his earnest pursuit of work are in doubt; he was able to work and already employed. The question is whether Dornath was "available for work" while he attended the classroom training. *Id.* Dornath bears the burden to prove that he meets the statute's eligibility requirements. *Id.* § 96.6(2).

Dornath argues that he was available for work the week he attended the training. His typical work schedule comprised four days—Monday through Thursday, 6:00 a.m. to 4:30 p.m. The training he attended went from Monday through Friday, 8:00 a.m. to 3:30 p.m. Winger Electric didn't schedule him for any regular work that week even though, as Dornath points out, the training class schedule didn't completely overlap his regular work hours.

Yet Dornath testified that it was *not* possible for him to go to the training and also to work full-time that week. The agency (and the district court) took Dornath's testimony at face value and determined that his attendance at training that week was "full time," leaving him unable to also perform services for his employer full time. Dornath in this appeal attempts to explain away his statement as inartful (referring to it as "gotcha testimony") and as refuted by other evidence. But we find nothing inaccurate in Dornath's admission. Although

we consider all evidence in reviewing an agency decision, including evidence contrary to the agency's finding, "support for the agency finding can be gathered from any part of the evidence." *Hy-Vee, Inc. v. Emp. Appeal Bd.*, 710 N.W.2d 1, 3 (Iowa 2005) (emphasis omitted) (quoting *Burns v. Bd. of Nursing*, 495 N.W.2d 698, 699 (Iowa 1993)). We defer to the agency's factual findings if "substantial evidence" in the record supports them. Iowa Code § 17A.19(10)(*f*); *Sladek v. Emp. Appeal Bd.*, 939 N.W.2d 632, 637 (Iowa 2020). The board's conclusion that he was unavailable for work finds substantial support in the record.

**II. Exceptions to the Unemployment Requirements in Section 96.4(3).**

**A. Partially Unemployed.** But failing to prove availability isn't fatal to Dornath's claim. Employees may still establish a right to benefits under two exceptions included in section 96.4(3). Under these exceptions, Dornath need not prove ability to work or availability for work if he can show that he was (1) *partially unemployed* while working at his regular job under Iowa Code section 96.1A(37)(*b*)(1) or (2) *temporarily unemployed* under section 96.1A(37)(*c*). We review agency legal interpretations under the errors-at-law standard and do not defer to the board when it interprets statutory language. *Sladek*, 939 N.W.2d at 637.

In determining whether a claimant is "partially unemployed," we look to the definition of that term in section 96.1A(37)(*b*). As relevant here, it states that a claimant is partially unemployed when, "[w]hile employed at the individual's then regular job, the individual works less than the regular full-time week and . . . earns less than the individual's weekly benefit amount plus fifteen dollars."

*Id.* § 96.1A(37)(*b*)(1). Focusing on the phrase "works less than the regular full-time week," the board reasoned that either (1) the training constituted work for Winger Electric, in which case Dornath performed services for his employer on a full-time basis that week, or (2) the training did not constitute work, in which case Dornath was not working *at all*—not merely *less* than in a regular week. Under either line of reasoning—working full-time or working no time—Dornath was not *partially* unemployed.

Accepting for the moment Dornath's argument that the training class constituted "work" for Winger Electric, we find no error in how the board and district court interpreted the phrase "less than the regular full-time week." *Id.* § 96.1A(37)(*b*)(1). Under the agency's regulations, *full-time week* refers to hours or days "established by schedule, custom, or otherwise" for "a week of full-time work for the kind of service an individual performs for an employing unit." Iowa Admin. Code r. 871—24.1(135)(*c*). Simply because the training class in total ran slightly shorter than his average workweek does not itself establish that the training class was less than full time. The training spanned an entire five-day work week, for seven and a half hours each day, overlapping closely the days and hours of Dornath's regular schedule—even when accounting for his usual four-day schedule.

The district court also explained how Dornath's argument could be viewed as internally inconsistent. If, as he argues, his training class really constitutes *work* for Winger Electric, then the days and hours of his training week are *exactly* "a week of full-time work for the kind of service an individual performs for an

employing unit." *See id.* (defining *full-time week*). Dornath's own argument, under this lens, means that he was not "partially unemployed" by Winger Electric when he attended training full-time all week.

On the other hand, if Dornath was *not* performing services for Winger Electric when attending the training, then he performed no services that week and was totally unemployed. *See* Iowa Code § 96.1A(37)(*a*) (defining *totally unemployed*). This brings us back to the question of availability under section 96.4(3) because *total* unemployment—unlike *partial* and *temporary* unemployment—is not one of the exceptions that exempt a claimant from having to prove ability and availability for work. In other words, if Dornath was totally unemployed that week, he would have been required to prove that he was both able and available to work. *Id.* § 96.4(3). And as we discussed above, the agency properly determined that Dornath was unavailable for work while he attended the training class. Dornath thus fails to establish eligibility based on partial unemployment under the statute.

**B. Temporarily Unemployed.** Turning to the second exception, to determine whether a claimant is "temporarily unemployed" we look to the definition of that term in section 96.1A(37)(*c*). The statute defines *temporarily unemployed* in relevant part to mean unemployment "due to a plant shutdown, vacation, inventory, lack of work, or emergency from the individual's regular job or trade in which the individual worked full-time and will again work full-time." *Id.*

Dornath argues that he fits under the definition of temporary unemployment based on lack of work. As Dornath presents the argument, he had time each day outside the scheduled hours for training to perform work for Winger Electric, and Winger Electric was aware of his availability but nonetheless didn't schedule him for work. From this, Dornath contends, we can infer that Winger Electric had a lack of work for him to perform, placing him within the statute's definition of "temporarily unemployed."

But concluding that Winger Electric didn't schedule Dornath the week of his training because it lacked work for him to perform entails not reasonable inference but speculation. One can conceive of many reasons for Winger Electric's decision not to schedule Dornath to perform services before or after his training classes each day that have nothing to do with a lack of work. Chief among them, perhaps, is simply that Winger Electric viewed the benefits of Dornath's working for such a limited time each day as insufficiently outweighing the hassle. Dornath presented no evidence at his hearing—in the form of testimony from someone at Winger Electric or otherwise—to establish the point. He offers nothing to suggest, for instance, that Winger Electric had laid off employees in the days before or after the training because of insufficient tasks, or that its supervisors had made statements about being short of work.

On this record, Dornath hasn't proved lack of work. And he doesn't argue that he meets any of the other grounds listed in the statute (a plant shutdown, emergency, and so on) to fall within the definition of "temporarily unemployed." *Id.* He thus failed to establish eligibility based on temporary unemployment.

**C. Liberal Construction of the Statute.** Dornath presses the point that when applying chapter 96, "we construe its provisions 'liberally to carry out its humane and beneficial purpose.' " *Irving v. Emp. Appeal Bd.*, 883 N.W.2d 179, 192 (Iowa 2016) (quoting *Bridgestone/Firestone, Inc. v. Emp. Appeal Bd.*, 570 N.W.2d 85, 96 (Iowa 1997)). But a liberal construction does not allow us "to ignore the ordinary meaning of words in a statute and to expand or contract their meaning to favor one side in a dispute over another." *Vroegh v. Iowa Dep't of Corr.*, 972 N.W.2d 686, 702 (Iowa 2022). On the contrary, we best carry out a statute's purposes "by giving a fair interpretation to the language the legislature chose; nothing more, nothing less." *Id.*

As the district court noted, the legislature has passed several laws favoring apprenticeships, yet none mention paying unemployment benefits. Iowa Code chs. 15B, 15C. And as it further noted, the Iowa Code includes several exceptions to the availability requirement that allow benefits to employees for some types of training. *See* Iowa Code §§ 96.4(6)(*a*) (department-approved training), .4(6)(*b*) (federal-approved training for workers unemployed by foreign competition under 19 U.S.C. § 2296(a)), .40(9)(*b*) (training implemented as part of a voluntary shared-work program). The limitations in these exceptions underscore the lack of any general apprenticeship exception to the availability requirement. "Generally, the express mention of one thing in a statute implies the exclusion of others," we have said, so "when a legislative body delineates exceptions, it is presumed that no others were created or intended." *Locate.Plus.Com, Inc. v. Iowa Dep't of Transp.*, 650 N.W.2d 609, 618 (Iowa 2002).

"The legislature is, of course, entitled to act as its own lexicographer." *Porter v. Harden*, 891 N.W.2d 420, 427 (Iowa 2017). It chose to serve that role in this case by defining both *partially unemployed* and *temporarily unemployed* in the statute. In defining *temporarily unemployed* in particular, the legislature identified a select set of circumstances—"plant shutdown," "lack of work," "emergency," and so on—in which the term applied. Iowa Code § 96.1A(37)(*c*). It's beyond our province to add to the legislature's list or redefine its terms to achieve an outcome that a fair reading of the statute simply doesn't allow.

### III. Departure from Precedent.

The focal point of Dornath's attack, measured both by repetition and rhetorical passion, is that the board's decision contradicts longstanding department precedent granting apprentices unemployment benefits for training. Dornath argues that the board and district court ignored prior decisions of the department of workforce development in which claimants who attended required training were granted unemployment benefits. He contends that the board's departure from past practice (by denying his claim) establishes that the agency action is an abuse of discretion warranting reversal under Iowa Code section 17A.19(10)(*n*).

Dornath cites no authority for the proposition that a board decision inconsistent with department of workforce development decisions constitutes an abuse of discretion. The board decides appeals of department decisions and operates independently of the department. We struggle to understand how a board decision that disagrees with an inferior tribunal's decisions somehow

establishes an abuse of discretion. The department decisions that Dornath recites as evidence of the board's departure from precedent were *never appealed* to the board. And Dornath makes no argument that the board has ignored its *own* precedent or, for that matter, precedent from our supreme court.

It's notable that Dornath brings his failure-to-follow-precedent argument under paragraph *n,* not paragraph *h,* of section 17A.19(10). Paragraph *h* specifically refers to an agency decision that is "inconsistent with the agency's prior practice or precedents." Iowa Code § 17A.19(10)(*h*). But even considered under paragraph *h,* Dornath's argument would still seem to lack oxygen since the "agency" whose prior practices or precedents are alleged to be inconsistent would be *the board*'s practices or precedents, not the department's. *Id.* Dornath's brief acknowledges this fact when he notes that "until late 2019, Iowa Workforce Development tribunals"—not the board—"routinely awarded benefits for training." (Emphasis omitted.) The board can hardly be criticized for failing to follow precedent when it hasn't entered any decisions to establish its own precedent on the matter.

Section 96.4(6)(*a*) includes an exception that permits unemployment benefits for "training with the approval of the director," referring to the director of the department of workforce development. *Id.* § 96.4(6)(*a*). The department's associated administrative rule, 24.39, lists the "department-approved training" for which claimants can receive unemployment benefits while in training. *See* Iowa Admin. Code r. 871—24.39(2). The board acknowledges that an earlier iteration of this rule included apprenticeship training. But the department

amended the rule in 2018 and removed apprenticeship training from the list. The board argues that this change supports its decision to affirm the department's refusal to approve benefits in this case.

Dornath notes that agencies must anchor administrative rules to statutory text, and the legislature didn't amend the underlying statute to trigger the rule's change in 2018. He argues that, regardless of what rule 24.39 says, the *statute* should still be read to entitle benefits consistent with the department's prior decisions. Dornath also argues that the rule's amendment can't serve as a defense for the decision to deny benefits in this case because the department continued to approve unemployment benefits for apprenticeship training in some cases even after the amendment.

Dornath's argument that the rule changed without a corresponding change in the statute goes to the validity of the rule, not to the board's interpretation of the statute. Dornath raises no challenge to the administrative rule itself or any decision by the department's director to rescind department approval for apprenticeship training. The board's interpretation of the statute squares with the amended administrative rule. Dornath has no right to relief under the rule. The department's prior approval of benefits in cases that were never appealed to the board—whether under the current version of rule 24.39 or the previous one—doesn't answer whether the board correctly interpreted the provisions of chapter 96 in this case.

**IV. Conclusion.**

As the board observed in its ruling, the unemployment benefits system created under chapter 96 is neither a job training fund nor a catchall compensation source. The statute permits benefit payments as a means of wage replacement for unemployed workers who meet the statute's requirements. The board's decision that Dornath has not established his eligibility for benefits is not an erroneous interpretation of the statute (paragraph *c*), unsupported by substantial evidence in the record (paragraph *f*), or an abuse of the board's discretion (paragraph *n*). Iowa Code § 17A.19(10). Echoing the board's decision, we offer no opinion on other potential avenues of relief that Dornath might possess that haven't been presented in this action.

We affirm the district court judgment upholding the board's ruling denying Dornath's unemployment insurance claim.

**AFFIRMED.**

All justices concur except Christensen, C.J., who takes no part.